Deniese STROOP & Ray
Dillen, Appellants,

v.

NORTHERN COUNTY MUTUAL INSURANCE COMPANY & Blanch Insurance Services, Inc. (f/k/a/ Elton George & Company), Appellees.

Ray Dillen & Deniese Stroop,
Appellants,

v.

Charter County Mutual Insurance Company and Blanch Insurance Services, Inc., Appellees.

Nos. 05–03–00971–CV, 05–03–00640–CV.

Court of Appeals of Texas,
Dallas.

April 16, 2004.

Rehearing Granted May 12, 2004.

Michael W. Lee, Law Offices of Michael W. Lee, Houston, for appellants.

Barton Lance Ridley, Gregory R. Ave, Touchstone Bernays Johnston Beall Smith, Dallas, for appellees.

Before Justices MOSELEY, O'NEILL, and RICHTER.

## OPINION

Opinion By Justice O'NEILL.

After colliding with one of Sunset Transportation's trucks, Ray Dillen and Deniese Stroop sued Sunset. The parties settled the claim, without trial, agreeing to judgments against Sunset with Dillen and Stroop promising not to execute on the judgments against Sunset personally, coupled with Sunset assigning Dillen and Stroop its rights against one of Sunset's insurers, Northern County Mutual Insurance Company. Dillen and Stroop then sued Northern, seeking recovery on the agreed judgments. In a separate suit, Dillen and Stroop sued Northern, as owners of Sunset's policy rights pursuant to a turnover order. Ultimately, both trial courts granted summary judgment in favor of Northern, and Dillen and Stroop appealed both decisions. We affirm the judgment in each case.

## Factual Background

In 1992, Sunset Transportation, Inc. carried a commercial insurance policy issued by Northern, with its one-year term starting in February of that year. After finding cheaper coverage, Sunset purchased a policy from Underwriters Lloyds Insurance Company (Lloyds), which went into effect on April 1, 1992. On April 7, 1992, Ray Dillen and his passenger Deniese Stroop were in an accident with a Sunset truck.

In 1994, Dillen and Stroop filed suit against Sunset in the 95th District Court in Dallas County ("underlying lawsuit"), seeking recovery for injuries allegedly resulting from the accident. Because Lloyds was designated an impaired insurer, the Texas Property & Casualty Guaranty Association (Texas Property) assumed Sunset's defense. Texas Property urged Northern that it was obligated to defend and indemnify Sunset under the Northern policy. Northern took the position that its policy had been cancelled effective April 1, 1992, which was several days before the accident.

In 1996, the parties settled the underlying lawsuit without trial. On behalf of Sunset, Texas Property agreed to pay Dillen and Stroop $52,500 each (plus court costs). Also, Sunset agreed to a judgment in the amounts of $750,000 and $500,000 in favor of Dillen and Stroop, respectively, and assigned Dillen and Stroop its rights under the Northern policy. In return, Dillen and Stroop agreed not to execute personally against Sunset on the agreed judgments. In addition, the settlement agreements provided that Texas Property would receive twenty-five percent of any proceeds that Dillen and Stroop recovered from Northern.

Dillen and Stroop, as assignees of Sunset's rights under the Northern policy, sued Northern in the 14th District Court (First Suit). They asserted, among other things, that Northern breached the insurance contract by failing to defend Sunset and sought recovery from Northern on the agreed judgments. The trial court granted summary judgment for Northern, and Dillen and Stroop appealed. Initially, this Court affirmed the summary judgment, holding that Northern had proved as a matter of law that the assignment was void, following State Farm Fire and Cas. Co. v. Gandy.[1] No. 05–97–01517–CV (Opinion issued Dec. 20, 1999; withdrawn Dec. 4, 2000). Dillen and Stroop filed for rehearing.

Faced with an assignment that had been declared invalid, Dillen and Stroop returned to the 95th District Court—where the underlying suit had been filed—and obtained a turnover order. The order required Sunset to turn over its rights against Northern to Dillen and Stroop.

Dillen and Stroop then filed a second suit against Northern, this time in the 162nd District Court (Second Suit).[2]

After that, this Court granted Dillen and Stroop's rehearing in the appeal of the First Suit (from the 14th). We withdrew the initial opinion declaring the assignment invalid (as unsupported by the motion for summary judgment) and substituted our Opinion on Rehearing. No. 05–97–01517–CV, 2000 WL 33409635 (Opinion on Rehearing issued Dec. 4. 2000, withdrawing Opinion issued Dec. 20, 1999). We reversed and remanded, holding that Sunset and Northern had not effectively cancelled the Northern policy before the date of the accident. Thus we did not reach the issue whether the assignment was void under *Gandy*.

Thereafter, in the Second Suit, a jury trial was held to determine Sunset's liability and damages from the accident. The jury rendered a verdict attributing 55% of the negligence to the Sunset driver (and 45% to Dillen). It found damages for Dillen and Stroop in the amounts of $140,500 and $360,000, respectively. Nonetheless, the 162nd District Court granted summary judgment, as well as judgment notwithstanding the verdict (JNOV), in favor of Northern. Dillen and Stroop appeal that decision (appellate Cause No. 05–03–00640–CV).

Dillen and Stroop then returned to the remanded First Suit (in the 14th) and sought recovery on the jury verdict from the Second Suit. The 14th District Court granted summary judgment in favor of Northern, without stating reasons. Dillen and Stroop appeal that decision also (appellate Cause No. 05–03–00971–CV).

---

1. 925 S.W.2d 696 (Tex.1996)

2. Northern changed its name to Charter County Mutual Insurance Company, which is the named defendant in the Second Suit.

## I. *Gandy* Precludes Recovery By Dillen and Stroop From Northern

In both cases, Dillen and Stroop ultimately sought recovery against Northern based on the jury verdict in the Second Suit. Dillen and Stroop argue Northern should be made to pay under the policy because, in the Second Suit, Sunset's liability and damages were determined in a "fully adversarial" trial. They assert this is consistent with *State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996).

■ In the Second Suit, Northern filed a motion for judgment notwithstanding the verdict, which the trial court granted. A motion for JNOV should be granted when (1) the evidence is conclusive and one party is entitled to recover as a matter of law or (2) a legal principle precludes recovery. *Anthony Equip. Corp. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191, 205 (Tex.App.-Dallas 2003, pet. dism'd).

In the First Suit, defendant Northern filed a motion for summary judgment, which the trial court granted. In the Second Suit, both parties filed motions for summary judgment; the trial court granted Northern's and denied Dillen and Stroop's motion. The standards for reviewing summary judgment under rule 166a(c) of the rules of civil procedure are well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* When both parties move for summary judgment and the trial court grants one motion for summary judgment and denies the other, we review all questions presented. *Nationwide Prop. & Cas. Ins. Co. v.*

*McFarland*, 887 S.W.2d 487, 490 (Tex. App.-Dallas 1994, writ denied). "The reviewing court should render such judgment as the trial court should have rendered." *Comm'rs Ct. v. Agan*, 940 S.W.2d 77, 81 (Tex.1997).

In the suit underlying the *Gandy* case, Julie Gandy had sued her stepfather Ted Pearce, who was insured by State Farm under a homeowner's policy. State Farm had reserved its right to deny coverage but provided Pearce a defense, agreeing to pay an attorney of Pearce's choice. Without going to trial and without informing State Farm, Pearce settled with Gandy in a three-prong arrangement: Pearce (defendant) agreed to a judgment against himself and assigned his claims against State Farm to Gandy (plaintiff). In exchange, Gandy agreed not to execute against Pearce personally on the agreed judgment. 925 S.W.2d at 700–03.

■ Gandy, as assignee of Pearce's rights under the policy, subsequently sued State Farm, seeking recovery on the agreed judgment against Pearce. The Court characterized the agreed judgment as a "sham judgment" and held the assignment invalid as against public policy. *Id.* at 713, 698. The Court set out the legal rule as follows:

> [A] defendant's assignment of his claims against his insurer to a plaintiff is invalid if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim.

*Id.* at 714. The Court expressly declined to address whether an assignment is inval-

id if one or more of the three listed elements is lacking, but went on to state,

> In no event, however, is a judgment for plaintiff against defendant, *rendered without a fully adversarial trial,* binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee.

*Id.* (emphasis added).

 The issue in this appeal turns on whether the jury trial in the Second Suit was a "fully adversarial trial," as required under *Gandy*.[3] We first note the novelty of the supposed jury "trial." The purpose of the proceeding was to find facts concerning Sunset's fault and Dillen and Stroop's damages from the collision. But Sunset was not a named defendant, was not served with citation, and did not make an appearance in the Second Suit. Thus, the "verdict" purported to determine hypothetically disputed fact questions between a party and a non-party. Moreover, Dillen and Stroop had sued Sunset in the underlying suit (in the 95th). The parties settled, with Dillen and Stroop accepting $52,500 each and, as discussed below, releasing Sunset from any further liability on account of the collision. Thus any fact issues addressed by the purported verdict in the Second Suit had previously been resolved in a final, now-unappealable decision in the underlying suit.

Those obstacles aside, other reasons exist why the proceeding falls short of a "fully adversarial trial." *Gandy* discusses the distortions that can occur once the defendant, assured of no personal liability, agrees to a judgment and assigns its claims against its insurer to plaintiff. The "principal problem" with the arrangement is that, once made, the defendant no longer has any incentive to oppose the plaintiff. *Id.* at 713. In the subsequent action by plaintiff against insurer, the proper inquiry for the court is this: "What result would plaintiff and defendant have reached had they remained fully adversarial to the end?" *Id.* at 719. *Gandy* questions whether that inquiry is even answerable once the plaintiff and defendant have settled and the defendant is assured of no further personal liability. *Id.*

The trial here illustrates some of the difficulties in attempting to reconstruct an adversarial posture between defendant and plaintiff. Northern attempted to defend the actions of Sunset's driver. When Dillen and Stroop offered the driver's testimony, through deposition testimony taken eight years earlier in the initial lawsuit, Northern objected. Northern's attorney represented to the trial court that the driver was not Northern's client, that he was beyond the reach of a subpoena, and thus Northern had no control over the witness. Ultimately no live witnesses were called on Sunset's behalf. In these

---

**3.** We conclude that *Gandy* applies to both cases on appeal, even though the parties' settlement agreements were signed before the date *Gandy* issued. The *Gandy* Court gave the decision retroactive effect as follows: "[T]oday's holding applies in this case, in pending cases in which complaint of an assignment has been preserved, and to every such assignment executed after today." *Gandy,* 925 S.W.2d at 720. We view the language including application to "pending cases" to include cases in which a party complaining on *Gandy* grounds timely presents its complaint to the trial court, and as necessary, preserves that complaint for appeal. Dillen and Stroop do not assert that Northern failed to raise timely its *Gandy* complaints below. Dillen and Stroop's argument is that, to preserve error, a party must adjudicate the insurer's obligation in a declaratory action. That argument is without merit.

circumstances, Northern's attempt to reconstruct a defense of Sunset cannot be deemed a "fully adversarial" trial.

Accordingly, as a matter of law, *Gandy* precludes recovery by Dillen and Stroop against Northern because there was no judgment rendered after a "fully adversarial" trial. Because Northern raised *Gandy* as grounds for judgment in both cases, we affirm the judgment in appellate Cause Number 05–03–00640–CV and in appellate Cause No. 05–03–00971–CV.

## II. The Turnover Order Adds Nothing to Dillen and Stroop's Ability to Recover

Dillen and Stroop argue that it properly obtained Sunset's rights under the Northern policy through the turnover order, which ordered Sunset to turn over to Dillen and Stroop all "claims and causes of action" held by Sunset against Northern. This mechanism to recover against an insurer, they assert, is consistent with *Gandy* and endorsed in *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 273 & n. 4 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

■ The turnover statute aids a judgment creditor in reaching property to satisfy a judgment. Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (Vernon Supp.2004).[4] Under the statute, a trial court may order a judgment debtor to turn over nonexempt property for the purpose of executing a

judgment. *Id.* § 31.002(b)(1). The statute is purely procedural in nature and does not provide for the determination of the substantive rights of the parties. *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 438 (Tex.App.-San Antonio 1994, no writ). The statute's purpose is merely to ascertain whether an asset is either in the judgment debtor's possession or subject to the debtor's control. *Republic Ins. Co. v. Millard*, 825 S.W.2d 780, 783 (Tex.App.-Houston [14th Dist.] 1992, no writ).

■ The turnover order adds nothing to Dillen and Stroop's purported right to recover against Northern. Whether Dillen and Stroop pursue Northern as assignees under a consensual agreement or as transferees under the turnover order, the *Gandy* principle applies: a judgment for plaintiff against defendant, rendered without a fully adversarial trial, is in no event binding on defendant's insurer in an action against that insurer by plaintiff. 925 S.W.2d at 714. Notwithstanding the turnover order, *Gandy* precludes Dillen and Stroop from recovering against Northern on the basis of a verdict that was not the result of a fully adversarial trial.

*Hartrick* does not advance Dillen and Stroop's argument. The judgment against the insured in *Hartrick* had already been procured after a fully adversarial trial. Thus, the *Hartrick* plaintiffs' recovering against the insurer, as transferees of the defendant's policy rights under the turnover order, was "in keeping with the re-

---

4. The turnover statute states, in pertinent part,

 (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

 (1) cannot readily be attached or levied on by ordinary legal process; and
 (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

Tex. Civ. Prac. & Rem.Code Ann. § 31.002 (Vernon Supp.2004).

quirements" of *Gandy.* *Id.* at 273 & n. 4. Accordingly, we resolve this issue against appellants Dillen and Stroop.

## III. Dillen and Stroop's Release of Sunset Precludes Recovery on the Jury Verdict

 In an alternative argument, Northern asserts that Dillen and Stroop also released Sunset from any and all liability resulting from the accident. Thus, Sunset cannot be legally liable for any judgment resulting from the second action, and Northern's obligation to indemnify Sunset is never triggered. Releases must be construed like other contracts. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999). If a contract can be given a certain or definite legal meaning, then it is not ambiguous and should be construed as a matter of law. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997). An ambiguity does not arise simply because the parties advance different interpretations of the contract's language. *Id.*

 In settling the underlying suit, each plaintiff and Sunset executed a "Compromise Settlement and Release Agreement" (Agreement). The Agreement provides that each plaintiff "completely releases and forever discharges [Sunset] ... from any and all past, pres-

ent, or future claims ... which the Plaintiff may now have or hereafter acquire" on account of the collision. That language of release is prefaced as "[i]n consideration of the payments called for herein, and subject to the provisions of Paragraph 5 and the separate documents and Agreements called for in that paragraph." Another section states that Sunset would "incur no further liability to the Plaintiff and will pay no further sums of money to the Plaintiff beyond the consideration stated in Sections 4 and 5." Paragraph 4 calls for payment of $52,500 to Dillen and $52,500 (plus court costs) to Stroop.[5]

Paragraph 5 states that the plaintiffs and defendant "agree to execute an Agreed Judgment and A Covenant Not to Execute and an Assignment of Rights, not to be filed of record, against [Sunset] in order to allow Plaintiff recovery under policies of insurance with Northern." The record does not contain a separate document comprising a covenant not to execute and assignment of rights. The parties, however, do not dispute that they made the contractual promises indicated by the names of the referenced agreements.

We conclude that the language of the Agreement releases Sunset from liability to pay on any judgment that might result from the jury verdict in the Second Suit. The release is expressly "subject to" the terms of the three-prong arrangement. Clearly, the parties intended those referenced agreements to be enforced. But we find no language conditioning the release of Sunset on Dillen and Stroop's recovering from Northern under the three-prong arrangement. Indeed, other language in the Agreement points to the opposite conclusion: it states that if any provision is held invalid, that invalidity will not affect

---

**5.** The parties do not dispute that this consideration was paid and remains paid.

any other provision in the Agreement.[6] Thus, whether or not any of the agreements referenced in the "subject to" paragraph is deemed invalid, that invalidity is not to affect other provisions, *i.e.*, the release provision.

Under the insurance policy, Northern promised, "We will pay all sums [Sunset] legally must pay as damages . . . to which this insurance applies, caused by an accident and resulting from . . . use of a covered auto." Under the release, apart from the three-prong arrangement, Sunset could "incur no further liability" and would "pay no further sums" to plaintiffs. Thus, Northern's indemnity obligation—to pay sums Sunset "legally must pay"—could not be triggered by any judgment resulting from the jury verdict in the Second Suit.

Accordingly, we resolve the release issue in favor of Northern. Because Northern raised this issue as grounds for judgment in both cases on appeal, we affirm judgment in appellate Cause Number 05–03–00640–CV and in appellate Cause No. 05–03–00971–CV.

## IV. Procedural Notice Issue Was Not Preserved And Is Without Merit

■ Dillen and Stroop argue that, in the Second Suit, the trial court's summary judgment in Northern's favor was procedurally improper, because Dillen and Stroop had no notice that the court intended to reconsider Northern's earlier filed motion for summary judgment.

The record reveals that the parties had filed motions and cross-motions for summary judgment in the summer of 2002. At that time, Dillen and Stroop filed a response to Northern's earlier motion for summary judgment. After the jury trial, the trial court issued its final judgment in March 2003. It stated, among other grounds, that "Defendants' Motion for Summary Judgment (which was previously denied but now reconsidered) is granted in all respects." The parenthetical phrase was handwritten and interlineated in the typewritten order.

■ Dillen and Stroop do not point us to any record evidence that they timely objected on the basis of inadequate notice. Accordingly, the issue is waived. *See* Tex. R.App. P. 38.1(h). Absent waiver, we would nonetheless conclude the argument is without merit. "A trial court may, in the exercise of discretion, properly grant summary judgment after having previously denied summary judgment without a motion by or prior notice to the parties, as long as the court retains jurisdiction over the case." *H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 877 (Tex.App.-Corpus Christi 1996, writ denied).

Accordingly, we affirm the judgment of the trial court in appellate Cause Number 05–03–00640–CV and in appellate Cause Number 05–03–00971–CV.

---

**6.** The paragraph entitled "Severability" states that if "one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity shall not affect any other provision herein."