COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

GURUMURTHY KALYANARAM,                    )

                                                                              )

Appellant,                          )              
No.  08-05-00132-CV

                                                                              )

v.                                                                           )                    Appeal from the

                                                                              )

DAN BURCK, FRANKLYN JENIFER,
             )                 101st District
Court

CHARLES CHAFFIN, GWEN
AGUIRRE,          )

ROBERT LOVITT, HASAN PIRKUL,
and          )              of Dallas County,
Texas

HOBSON WILDENTHAL,                                  )

                                                                              )                    (TC# 03-02446)

Appellees.                          )

                                                                              )

 

 

O
P I N I O N

 








This is an appeal
from a grant of a summary judgment. 
Appellees moved for both a traditional summary judgment and a
no-evidence motion for summary judgment. 
The trial court granted both motions in favor of Appellees.  On appeal, Appellant agues the trial court
erred in granting the motions because: 
(1) Res Judicata does not bar his claim for malicious prosecution; (2)
the release agreed to by Appellant does not address the claim for malicious
prosecution; (3) the trial court erred when it granted the no-evidence summary
judgment as to the claim of duress because Appellant submitted sufficient
evidence of duress; (4) the trial court should not have considered the
no-evidence summary judgment motion because it was submitted in violation of a
governing scheduling order; and (5) Appellees were estoppel from relying on the
settlement agreement because Appellant proved duress.  We affirm.

Appellant
Gurumurthy Kalyanaram was a faculty member employed by the University of Texas
at Dallas (AUTD or
University@).  In August of 1998, Appellant=s administrative assistant lodged
allegations of misconduct concerning reimbursement expenses to University
officials.  Appellant was informed of the
allegations of misconduct concerning these reimbursements the next month.

Appellant denied
any wrongdoing and an internal review was conducted by the University.  By letter dated December 9, 1998, Appellant
was asked to step down as Academic Director of Masters Programs and Chair of
Masters Program Committee, Area Coordinator for the Marketing Group, and Senior
Faculty Liaison for External Affairs. 
Appellant was officially notified of the allegations of misconduct by
letter dated December 10, 1998.

Subsequent to
these allegations, Appellant met with University officials and after the
meeting, he retained the services of a lawyer. 
At some point after the University officials initially informed
Appellant of the allegations, he sent a letter to each member of the Board of
Regents of the University System of Texas alleging that UTD officials had
engaged in fraudulent activity in connection with the ACohort
MBA Program.@  Appellant also filed five separate lawsuits
in both Federal and State courts including a suit to enjoin an internal
academic investigation by UTD administration and faculty members.

Pursuant to a
settlement agreement and release (Athe
release@),
Appellant agreed to dismiss with prejudice the five pending suits and resign
his faculty position at UTD in exchange for a sum certain to be paid in
settlement of the claims.  After entering
into the settlement agreement, orders of dismissal were entered.








Appellant was
subsequently indicted on felony counts of theft and securing execution of
documents by deception in May of 1999. 
On June 26, 2002, Appellant was acquitted on both charges.  Appellant then filed suit against the
University of Texas at Dallas, the University System of Texas, and various
named defendants in their Aindividual
and official capacity.@  A plea to the jurisdiction was granted by the
trial court and Appellant=s
claims against the University of Texas at Dallas and the University of Texas
System were dismissed with prejudice.  Appellees=
moved to sever the dismissed claims and for final judgment on those claims and
the motion was granted.

After the plea to
the jurisdiction was granted, Appellant filed a second amended petition  alleging malicious prosecution, conspiracy to
commit malicious prosecution, and setting forth the affirmative defense of
duress.  Appellees moved for summary
judgment and a hearing was held in August of 2004.  After the hearing, Appellees filed a
no-evidence summary judgment on Appellant=s
affirmative defense of duress.  By order
dated February 21, 2005, the trial court granted Appellees= AFirst
Amended Second Motion for Summary Judgment@
and AFirst
Supplemental No-Evidence Motion for Summary Judgment.@

Standards
of Review








The standards for
reviewing traditional and no‑evidence summary judgment rulings are well‑established.  The movant for traditional summary judgment
has the burden of showing there is no genuine issue of material fact and that
it is entitled to judgment as a matter of law. 
See Tex.R.Civ.P.
166a(c); Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548‑49
(Tex. 1985); Duran v. Furr=s
Supermarkets, Inc., 921 S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ
denied).  When a defendant is the movant
for summary judgment, it must either disprove at least one element of the
plaintiff=s theory
of recovery or conclusively establish all essential elements of an affirmative
defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 
1997); City of Houston v. Clear Creek Basin Authority, 589 S.W.2d
671, 678‑79 (Tex. 1979).

Once the defendant
establishes its right to summary judgment as a matter of law, the burden shifts
to the plaintiff to present evidence raising a genuine issue of material fact,
thereby precluding summary judgment.  City
of Houston, 589 S.W.2d at 678‑79. 
In determining whether there is a disputed material fact issue
precluding summary judgment, all evidence favorable to the non‑movant
must be taken as true and all reasonable inferences, including any doubts, must
be resolved in the non‑movant=s
favor.  Nixon, 690 S.W.2d at 548‑49;
DeLuna v. Guynes Printing Co. Of Texas, Inc., 884 S.W.2d 206, 208
(Tex.App.‑- El Paso 1994, writ denied).

A no‑evidence
summary judgment under Rule 166a(i) is essentially a pretrial directed verdict
and as such, we apply the same legal sufficiency standard in reviewing a no‑evidence
summary judgment as we apply in reviewing a directed verdict.  Wyatt v. Longoria, 33 S.W.3d 26, 31
(Tex.App.-‑El Paso 2000, no pet.). 
The party moving for no‑evidence summary judgment must assert that
there is no evidence of one or more essential elements of a claim or defense on
which the non‑movant would have the burden of proof at trial.  See Tex.R.Civ.P.
166a(i).  The burden then shifts to the
non‑movant to produce evidence raising a fact issue on the challenged
elements.  See id.  To raise a genuine issue of material fact,
the non‑movant must set forth more than a scintilla of probative evidence
as to an essential element of the non‑movant=s
claim or defense.  See id.;
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), cert.
denied, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). 








More than a
scintilla of evidence exists when the evidence A>rises to a level that would enable
reasonable and fair‑minded people to differ in their conclusions.=@  Havner, 953 S.W.2d at 711.  Less than a scintilla of evidence exists when
the evidence is Aso weak
as to do no more than create a mere surmise or suspicion@
of the existence of a fact, and the legal effect is that there is no
evidence.  Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983).  As with a
traditional summary judgment, we view the evidence in the light most favorable
to the non‑movant, disregarding all contrary evidence and
inferences.  See Havner,
953 S.W.2d at 711.

Where the trial
court has granted summary judgment without specifying the ground or grounds
relied on for the ruling, summary judgment will be affirmed on appeal if any of
the theories advanced are meritorious.  See
State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993);
Rogers v. Ricane Enter., Inc., 772 S.W.2d 76, 79 (Tex. 1989).

In Issue Two,
Appellant argues that the trial court erred in granting the Appellees= motion for traditional summary judgment.  Appellant contends that his claims were not
barred by the doctrine of release because the release does not address an
unaccrued cause of action and three of the Appellees are not beneficiaries to
the agreement.

As a preliminary
matter, Appellant suggest that there is no evidence before this Court or the
trial court to support a finding of release. 
When Appellees filed the first motion for summary judgment, they did not
attach a copy of the release to the motion. 
Instead, a notice was attached to the motion which stated that the
release Awas
submitted only to Judge Jay Patterson for in camera inspection.@ 
[Emphasis in original].








We note that
Appellant did not object to the summary judgment evidence during the
hearing.  Further, on appeal, Appellant
has failed to cite any relevant legal authority in support of his
argument.  Appellant has waived this
argument.  See Velasquez v. Waste
Connections, Inc., 169 S.W.3d 432, 435-36 (Tex.App.--El Paso 2005, no
pet.).  However, even if Appellant
preserved this error and cited relevant case law in support of his position, we
disagree with his argument.

 Although the release was not attached to the
motion, it is clear from the record that the release was before the court.  Appellees properly filed a motion to seal
which was never addressed by the court. 
Further, the final order states that A[a]fter
considering the pleadings, motions, responses, evidence on file, and Plaintiff=s replies the Court is of the opinion
that Defendants motion[s] are meritorious . . . .@  Finally, the release was properly attached to
a third motion for summary judgment filed before the court rendered a
decision.  








Appellant next
argues that the release does not address the cause of action for malicious
prosecution.  We again disagree.  A release is an agreement or contract in
which one party agrees that a duty or obligation owed by the other party is
discharged immediately on the occurrence of a condition.  National Union Fire Ins. Co. Of
Pittsburgh, P. A. v. Insurance Co. of N. Am., 955 S.W.2d 120, 127 (Tex.App.‑‑Houston
[14th Dist.] 1997), aff=d,
20 S.W.3d 692 (Tex. 2000).  A release
extinguishes a cause of action and bars recovery on the released matter.  Dresser Indus., Inc. v. Page Petroleum,
Inc., 853 S.W.2d 505, 508 (Tex. 1993). 
To effectively release a claim, the release must Amention@ the claim to be released.  Victoria Bank & Trust Co. v. Brady,
811 S.W.2d 931, 938 (Tex. 1991). 
Although the agreement must Amention@ the claim to be effective, the parties
need not identify each potential cause of action relating to the subject matter
of the release.  See Keck, Mahin &
Cate v. National Union Fire Insurance Company of Pittsburgh, P. A., 20
S.W.3d 692, 698 (Tex. 2000).  Further,
although releases include claims existing at the time of execution, they may
also include unknown claims and damages that develop in the future.  See Keck, Mahin & Cate, 20
S.W.3d at 698.

Under Texas law, a
release is a contract.  See Williams
v. Glash, 789 S.W.2d 261, 264 (Tex. 1990). As such, a release should be
interpreted like any other contract.  Stroop
v. Northern County Mut. Ins. Co., 133 S.W.3d 844, 851 (Tex.App.‑-
Dallas 2004, pet. denied).  Deciding
whether a contract is ambiguous is a question of law for the court.  Coker v. Coker, 650 S.W.2d 391, 394 (Tex.
1983).  In construing a contract, it is
the primary task of this Court to determine the parties=
true intentions as expressed in the agreement.  See id. at 393; J.M. Davidson, Inc. v.
Webster, 128 S.W.3d 223, 229 (Tex. 2003). 
We consider the entire writing and attempt to harmonize and give effect
to all the provisions of the contract by analyzing the provisions with
reference to the whole agreement.  Webster, 128 S.W.3d at 229.

If the contract
can be given a definite or certain legal meaning, it is unambiguous and we
construe it as a matter of law.  Id.  On the other hand, a contract is ambiguous if
it is susceptible to more than one reasonable interpretation.  Frost Nat. Bank v. L & F Distributors,
Ltd., 165 S.W.3d 310, 312 (Tex. 2005). 
If the contract is unambiguous, the court must enforce the contract as
written.  Heritage Resources, Inc. v.
NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).  If a contract is ambiguous, then
interpretation of the contract presents a fact issue for the jury.  Columbia Gas Transmission Corp. v. New Ulm
Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). 


In construing the
agreement, it should be read as a whole rather than by isolating any one
phrase, sentence, or section of the agreement. 
State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex.
1995).  Finally, the language in the
agreement should be given a plain grammatical meaning unless to do so would
defeat the parties intent.  Dewitt
County Elec. 

Co-op., Inc. v. Parks, 1
S.W.3d 96, 101 (Tex. 1999).








Appellant argues
that by its own terms, the release is limited to all claims that could have
been brought at the time of the agreement or that are expressly set forth in
the agreement itself.  Appellant relies
on Victoria Bank & Trust Co. v. Brady for the proposition that
general, categorical releases must be narrowly construed.  See Brady, 811 S.W.2d at 938.  Brady specifically held that to
effectively release a claim in Texas, the releasing instrument must Amention@
the claim to be released.  Id.

The Supreme Court
subsequently clarified the holding of Brady.  See Keck, Mahin & Cate, 20 S.W.3d
at 697-98.  At issue in Keck, Mahin
& Cate, was an agreement which arguably 
released claims against a party. 
The appeals court interpreted the agreement narrowly relying on Brady.  The Court stated that the agreement at issue
in Brady was interpreted narrowly because it specifically limited itself
to a certain transaction and thus could not be extended to a separate
transaction.  Keck, Mahin & Cate,
20 S.W.3d at 698.  However, the agreement
in Keck, Mahin & Cate was much broader and was not limited to any
specific claim or transaction.  Id.  The Court went on to explain that Brady
simply stands for the proposition that to be effective, the agreement must Amention@
the claim.  Id.

We are called upon
to determine whether or not the release Amentions@ Appellant=s
cause of action for malicious prosecution. 
Appellant directs our attention to two individual sections of the
agreement as relevant to his issue. 
First, to Article 5 which states: 








Dr. GK . . . agrees not to initiate any
suit or claim . . . [on] any and all claims, demands, and causes of action of
any nature, known or unknown, suspected or unsuspected, fixed or contingent,
liquidated or unliquidated, including those raised in the Lawsuit and/or during
or out of the employment relationship between Dr. GK, and the University of
Texas at Dallas and/or the System, which Dr. GK or anyone claiming by and
through him ever had, now or hereafter can or shall or may have, arising out of
or based on any event or events from the beginning of the world to the date of
this Agreement, specifically including, but not limited to any claim arising
from Dr. GK=s
relationship with or employment by the University of Texas Parties . . . .

 

Next, Appellant directs our
attention to Article 3, section (a) which states:

These payments shall be paid as a full
and final settlement of all claims which have accrued for damages and attorney=s fees and costs.  . . . 
These payments shall be paid as full settlement of all claims for any
and all alleged violations of Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. ' 2000 et
seq.; for alleged violations of the Texas Whistle Blower Act, Tex. Gov.
Code ' 544.001
et seq.; for the alleged violations of the First Amendment pursuant to
42 U.S.C. ' 1983;
for alleged violation of Fourteenth Amendment procedural and substantive due
process; for claims of Civil Extortion, Wrongful Threat, Abuse of Process,
Intentional Infliction of Mental Anguish, Tortuous Interference with Contract,
and Defamation; for alleged violations of civil rights, and threats of coercion
and/or retaliation, including claims pursuant to 42 U.S.C. ' 1983; for claims of mental anguish and
pain and suffering; for claims for injunctive relief, and claims for attorney=s fees, costs, and expenses for
recovering same.  . . .  Dr. G.K. further releases all claims,
waives all rights of recovery, and covenants not to sue for lost wages, past and
future earnings, or other items of employment compensation known or unknown as
of the date of this Settlement Agreement or which could have been raised in the
lawsuits and/or out of the employment relationship between Dr. G.K. and the
University of Texas at Dallas or the University of Texas System through the
date of this agreement.

 

For the release to
Amention@
a claim, it does not have to specifically describe a particular cause of
action.  See Memorial Medical Center
of East Texas v. Keszler, 943 S.W.2d 433, 434 (Tex. 1997).  The resolution of this issue turns on our
application of Keszler.  In Keszler,
the court of appeals held that for a claim to be Amentioned,@ it had to be specifically enumerated
within the release.  Id. at
434.  The Supreme Court disagreed.  Id.








At issue in Keszler,
was a release entered into between a doctor and a hospital which had revoked
his staff and clinical privileges after he had been found guilty of tampering
with government documents.  Subsequent to
entering into the release, the doctor filed suit for exposure to ethelyne oxide
gas, a claim which was unrelated to the original dispute.  Keszler, 943 S.W.2d at 434.  The agreement stated that the parties
released all claims related to the relationship between the doctor and the
hospital.  Id.  The Supreme Court found that because the
exposure claim was related to the relationship between the parties, it was Amentioned@
by the agreement.  Id. at 435.

If we were to read
Article 3(a) of the agreement in isolation, we might agree with Appellant=s contention that the release does not Amention@
the claim for malicious prosecution. 
However, when reading this article in light of the whole agreement, it
is clear that the agreement encompasses more than simply those claims set forth
in Article 3(a) and hence does Amention@ the claim.

Article 1 states A[t]his Agreement is entered into for
the purposes of resolving and settling all civil claims, causes of action,
differences, disputes, and controversies the parties have or may have that arise
out of the subject matter of this litigation, to compromise and settle all
such matters . . . .@  [Emphasis added].  Next, Article 5 includes:

[A]ny and all claims, demands, and
causes of action of any nature, known or unknown, suspected or unsuspected,
fixed or contingent, liquidated or unliquidated, including those raised in
the Lawsuit and/or during or out of the employment relationship between Dr. GK,
and the University of Texas at Dallas and/or the System, which Dr. GK . . .
ever had, now or hereafter can or shall or may have, arising out of or based on
any event or events from the beginning of the world to the date of this
Agreement, specifically including, but not limited to any claim arising from
Dr. GK=s
relationship with or employment by the University of Texas Parties . . .
.  [Emphasis added].

 








It is clear after
a plain reading of the release, in light of Keszler, that any claim that
arose from the employment relationship between Appellant and the University of
Texas at Dallas is Amentioned@ by the release, even if the cause of
action did not accrue until termination of the prosecution.  Although the prosecution of Appellant
occurred after entering into the release, any claim for malicious prosecution
would be based on actions of the parties that occurred during the Arelationship with or employment by the
University.@  To put it another way, but for the employment
relationship between Appellant and the University of Texas at Dallas, no
criminal prosecution would have occurred.

But the release
goes much further than just claims or causes of action arising out of the
employment relationship.  The release
covers Aany and
all claims...known or unknown, suspected or unsuspected, fixed or contingent .
. . including those raised in the Lawsuits and/or during or out of the
employment relationship . . . .@  [Emphasis added].  Further, the release addresses any claims
Appellant Aever
had, now or hereafter can or shall or may have, arising out of or based on
any event or events from the beginning of the world to the date of this
Agreement . . . .@  [Emphasis added].  As such, any actions taken by Appellees in
securing the prosecution of Appellant would be covered by the release.








Appellant next
contends that the release cannot operate to release his claims against
Appellees Dan Burck, Charles Chaffin, and Robert Lovitt because they were not
identified as parties to the release.  A
release discharges only those persons or entities that it names or specifically
identifies.  McMillen v. Klingensmith,
467 S.W.2d 193, 196 (Tex. 1971).  One can
claim the protection of a release only if the release refers to him or her by
name or with such descriptive particularity that his or her identity or
connection with the event is not in doubt. Duncan v. Cessna Aircraft Co.,
665 S.W.2d 414, 420 (Tex. 1984).  A[T]he McMillen requirement of specific
identification is not met unless the reference in the release is so particular
that >a
stranger could readily identify the released party.=@ 
Id. at 419.

The release signed
by Appellant applies to Athe
University of Texas System...the University of Texas at Dallas . . . and Dr.
Hasan Pirkul, Dr. Hobson Wildenthal, Dr. Franklyn G. Jenifer, Dr. William
Cunningham and Gwen Aguirre individually . . . and in their official capacities
. . . .@  The release further states that ADr. GK . . . hereby releases . . . the
University of Texas System, University of Texas at Dallas, Dr. Hasan Pirkul,
Dr. Hobson Wildenthal, Dr. Franklyn G. Jenifer, Dr. William Cunningham,
and Gwen Aguire, any and all of their employees, agents, officers,
directors, executors, estates, insurers, and any other person or entity who or
which may be liable through it . . . .@  [Emphasis added].

Appellant would
have us read the release as including employees only in their official capacity
or as stated by Appellant, Aindividuals
who may be liable derivatively through UT System or UTD.@  This, however, misconstrues the language of
the release.  The release clearly
identifies Aemployees
. . . and any other person or entity who or which may be liable through
it . . . .@  [Emphasis added].








The issue for our
consideration is whether or not the class of Aemployees@ is sufficiently descriptive enough to
meet the Duncan requirement.  The
test in determining the parties included in a waiver agreement is whether a
stranger could readily identify the released party.  Duncan, 665 S.W.2d at 419‑20.  However, we do not read Duncan or its
progeny as requiring in every instance each person or entity claiming the
benefit of a release to be specifically named. 
See Winkler v. Kirkwood Atrium Office Park, 816 S.W.2d 111, 113‑14
(Tex.App.‑‑Houston [14th Dist.] 1991, writ denied)(waiver naming Athe Club@
covered Aall
individuals and entities involved@);
see also Vera v. North Star Dodge Sales, Inc., 989 S.W.2d 13, 19
(Tex.App.-‑San Antonio 1998, no pet.)(release of named principal from any
liability associated with the sale also released the employees associated with
that sale).

Any claims
Appellant has against Appellees Dan Burck, Charles Chaffin, and Robert Lovitt
relate to actions taken by them on behalf of UTD and Appellant has not
indicated otherwise.  We therefore find
that the named class Aemployees@ is sufficiently descriptive so that
even a stranger to the agreement could readily understand and recognize that
the release intended to include employees of UTD.  To this extent, Appellant=s second issue is overruled.[1]

Duress

Because Issues
Three and Five are related, we will address them together.  In Issue Three, Appellant argues the court
erred by granting Appellees=
second no‑evidence summary judgment motion on his affirmative defense of
duress.  In Issue Five, Appellant argues
that because duress was proven, Appellees are estoppel from relying on the
settlement agreement.








To establish a claim
for duress, Appellant must show the following elements:  (1) a threat or action was taken without
legal justification; (2) the threat or action was of such a character as to
destroy the other party=s
free agency; (3) the threat or action overcame the opposing party=s free will and caused it to do that
which it would not otherwise have done and was not legally bound to do; (4) the
restraint was imminent; and (5) the opposing party had no present means of
protection.   McMahan v. Greenwood,
108 S.W.3d 467, 482 (Tex.App.‑-Houston [14th Dist.] 2003, pet. denied); see
also Gigout v. C & L Constructors, Inc., No. 01‑96‑01109‑CV,
1999 WL 191324 *4 (Tex.App.‑-Houston [1st Dist.] April 8, 1999, pet.
denied)(not designated for publication)(applying elements in the context of
duress as a result of a threat of criminal prosecution).

To support his
argument that he raised more than a scintilla of evidence as to his claim of
duress, Appellant directs our attention to three documents.  The first document is an affidavit dated July
28, 2004.  The second and third documents
are portions of deposition testimony taken from both Appellant and his
wife.  At the outset, we note that the
affidavit Appellant relies on in this appeal was not attached to or referenced
in his response to Appellees=
no-evidence summary judgment motion. 
Rather, the affidavit was attached to an earlier filed response to
Appellees=
traditional summary judgment motion.








Unlike a
traditional summary judgment motion, when an opponent files a no-evidence
summary judgment motion, the burden shifts to the non-movant to specifically
point out evidence raising a fact issue. 
Saenz v. Southern Union Gas Co., 999 S.W.2d 490, 493 (Tex.App.‑-El
Paso 1999, pet. denied).  Although the
nonmovant is not required to Aneedlessly
duplicate evidence already found in the court=s
file,@ he is
required to make sure the evidence is properly before the trial court for its
consideration in ruling on the motion for summary judgment.  Saenz, 999 S.W.2d at 494.  A[A]
nonmovant does not meet this requirement by the mere existence in the court=s file of a response to an earlier
summary judgment motion.@
 Id.

Because the
affidavit dated July 28, 2004 was neither attached to or referenced in the
response to the no-evidence summary judgment, it was not before the trial court
when it granted the motion and this Court will not consider it.  See also Trejo v. Laredo Nat. Bank,
185 S.W.2d 43, 49 (Tex.App.-‑San Antonio 2005, no pet.)(holding
photographs attached to a response to second no-evidence summary judgment
motion were not before court when it ruled on first no-evidence motion).  The only documents specifically referenced in
or attached to Appellant=s  response consist of:  (1) an affidavit of Appellant dated December
7, 2004; (2) excerpts from the deposition testimony of Appellant; and (3)
excerpts from the deposition testimony of Padma Rajagopal, wife of Appellant.








We will consider
the affidavit of December 7, 2004 in determining whether or not Appellant has
presented more than a scintilla of evidence as to duress.  In this affidavit, Appellant states that UTD
forwarded A[A]guirre=s accusations to the Collin County
District Attorney on December 11, 1998.@  Appellant, in the same affidavit, states that
he signed the agreement based on Aassurances
that they would collectively withdraw and abandon their frivolous and malicious
criminal accusations . . . .@  Appellant makes it clear in his affidavit
that he knew that the charges had been forwarded to the District
Attorney at the time he executed the settlement agreement.  Appellant states that A[b]efore
the actual mediation . . . my counsel and I made direct inquiry as to . . .
criminal charges maliciously filed by the UT defendants the prior year.@ 
Appellant also states that the settlement agreement was Amaterially premised . . . [on]
assurances that they would collectively withdraw and abandon their . . .
criminal accusations  . . . .@

Appellant now
argues that the threat of criminal prosecution, which was carried out by UTD by
forwarding information to the District Attorney=s
Office two years prior to entering into the agreement, caused duress sufficient
to void the agreement.  However, once UTD
forwarded the information to the District Attorney, the threat of prosecution
no longer emanated from UTD, but rather from the District Attorney=s Office.  Duress or undue influence can suffice to set
aside a contract, but it is well‑settled that it must originate from one
who is a party to the contract.  See,
e.g., Dimmitt v. Robbins, 74 Tex. 441, 12 S.W. 94, 97 (1889); Kosowska
v. Khan, 929 S.W.2d 505, 508 (Tex.App.‑‑San Antonio 1996, writ
denied); In re Marriage of Banks, 887 S.W.2d 160, 163‑64 (Tex.App.‑‑Texarkana
1994, no writ); King v. Bishop, 879 S.W.2d 222, 224 (Tex.App.‑‑Houston
[14th Dist.] 1994, no writ).  Courts will
not invalidate contracts on grounds of duress when the alleged duress derives
from a third person who has no involvement with the opposite party to the
contract.  King, 879 S.W.2d at
224, citing Dimmitt, 12 S.W. at 97.








Appellant also
directs our attention to portions of the deposition testimony of both himself
and his wife taken in 1999.  During the
deposition, Appellant was asked by opposing counsel if he knew what result a
criminal conviction would have on his status as a permanent resident.  Appellant=s
wife was also questioned about residency status but not as to the result of a
criminal conviction on that status. 
Appellant points to these questions by opposing counsel as evidence of a
threat.

In the affidavit
attached to Appellant=s
response to the no-evidence summary judgment motion, he states that A[t]hese statements made me feel
intimidated and threatened with the danger of being deported . . . .@ 
We note that Appellant did not say the statements of counsel for
Appellees, which were made during the deposition, subsequently induced or
influenced him into executing the settlement agreement and release.  We find that Appellant has failed to present
more than a scintilla of evidence that a credible threat existed.  Therefore, Appellant has failed to meet his
burden with respect to an essential element of his defense of duress.  We affirm the judgment of the trial court
granting Appellees= no-evidence
summary judgment motion as to Appellants claim of duress.  Issue Three is overruled.  Additionally, because we find no evidence of
duress, Issue Five is also overruled.








In his fourth
issue, Appellant argues that the no-evidence motion of Appellees should not
have been considered by the trial court. 
Appellant makes the argument that because the trial court sustained an
objection to the motion on the basis of timeliness under the scheduling order,
the trial court subsequently erred in granting that same motion.  Appellant points to a docket sheet entry
stating A[g]ranted
Defendants= First
Supplemental No-Evidence Motion for Summary Judgment as to New Duress Claim
except as to waiver of sovereign immunity[;] sustained Plaintiff=s objection of lateness under the
scheduling order@ as
support for his proposition.  

A docket sheet
entry is inherently unreliable because it lacks the formality of an order or a
judgment.  See Garza v. Tex. Alcoholic
Beverage Comm=n,
83 S.W.3d 161, 167 (Tex.App.-‑El Paso 2000), aff=d, 89 S.W.3d 1, 6 (Tex. 2002).  As we stated in Garza, it was perhaps
due to this unreliability that a docket sheet entry was generally considered
insufficient to constitute a judgment or decree of the court, especially if the
docket sheet entry was unsigned.  Id.
at 7.

Docket sheet entries such as this
cannot be used to overrule or contradict a written order of the trial
court.  See id. at 7; citing
N‑S‑W Corp. v. Snell, 561 S.W.2d 798, 799 (Tex. 1997); Springer
v. American Zurich Ins. Co., 115 S.W.3d 582, 587-88 (Tex.App.‑-Waco
2003, pet. denied)(trial courts ruling was determined by actual motion, not by
conflicting docket sheet entry).  The
trial court granted Appellees=
motion for a no-evidence summary judgment motion in a written order.   That ruling must prevail despite the
apparently conflicting notation on the unsigned docket sheet.  We therefore overrule Issue Four.

We affirm the
trial court=s
judgment.

 

 

 

June
8, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
The trial court did not specify the grounds relied on in its final order.  Because we find that the trial court properly
granted summary judgment based on the doctrine of release, we do not reach
Appellant=s claim
in Issue One that summary judgment based on res judicata was
improper.  See State Farm Fire
& Cas. Co., 858 S.W.2d at 380.