**Affirm in part; Reverse and Render in part; Opinion Filed April 30, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

### No. 05-11-01519-CV

### PAUL MICHAEL LEIGHTON, Appellant
### V.
### ELIZABETH REBELES, Appellee

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-11357-A**

## OPINION

Before Justices Francis, Lang, and Evans
Opinion by Justice Evans

Paul Michael Leighton appeals the trial court's judgment declaring that he and Elizabeth

Rebeles formed a general partnership and dividing the partnership assets between them.

Specifically, Leighton challenges the jury's finding that Rebeles did not release her claim to the

partnership assets at issue. Leighton further challenges the trial court's entry of judgment

notwithstanding the verdict on his claim against Rebeles for breach of an oral contract. After

examining the record on appeal, we conclude there was sufficient evidence to support the jury's

finding that Rebeles did not release her claim to the assets. We further conclude the trial court

erred in rendering judgment in favor of Rebeles on Leighton's breach of contract claim.

Accordingly, we reverse the portion of the trial court's judgment ordering that Leighton take

nothing by his breach of contract claim and render judgment that he recover $31,000 in damages

along with postjudgment interest. We further render judgment that Leighton recover his

attorney's fees as stipulated in the court below. In all other respects, the trial court's judgment is affirmed.

## BACKGROUND

Paul Michael Leighton and Elizabeth Rebeles met in Reno, Nevada and began a relationship. In 1984, Leighton moved to Dallas and Rebeles followed several months later. Once they were in Dallas, the two began living together, filing joint tax returns, and purchasing property as husband and wife. Rebeles believed they had entered into a common law marriage.

Shortly after Rebeles moved to Dallas, she and Leighton began operating a sand and gravel business together. Leighton handled the operations and finances, while Rebeles managed the administrative and customer relations aspects of the business. Together, Rebeles and Leighton purchased two properties that they operated as Paul's Pit Sand and Gravel and Hutchins Sand & Gravel. Both parties signed as debtors for loans and credit sales made to the businesses. The proceeds from the operations were deposited into joint checking accounts that served as both their business and personal bank accounts. Neither Rebeles nor Leighton drew a salary, but instead paid for their personal matters from the joint accounts.

In 2006, Rebeles filed for a divorce from Leighton. Leighton filed a counter-petition asserting that there was no marriage but, in the alternative, asked the court to partition the property he and Rebeles had acquired during the time they lived together. In August 2006, Rebeles discovered there was no record of her divorce from Paul Rebeles, the man to whom she had been married before her alleged common law marriage to Leighton. Because Rebeles could not prove that she had divorced her previous husband, she and Leighton decided to non-suit their divorce case.

To facilitate their separation, Leighton and Rebeles signed an agreement dated August 26, 2006.[1] The agreement stated,

> Let it be known that for $150,000.00 Elizabeth Rebeles Leighton . . . agrees to relinquish all past, present, and future interest in Paul's Pit Sand and Gravel, and in Hutchins Sand & Gravel and any dealings by Paul M. Leighton.

Rebeles testified at trial that the money was intended to allow her to run her own business and she would "bow out" of Leighton's operation of Paul's Pit Sand and Gravel and Hutchins Sand & Gravel. Leighton testified that the $150,000 was part of a "severance package" to allow Rebeles to go out on her own. Leighton acknowledged at trial that the agreement did not partition the two properties he and Rebeles owned jointly and on which he mined and sold material for Paul's Pit and Hutchins Sand & Gravel. Accordingly, he and Rebeles met with an attorney who drew up documents by which Rebeles would transfer her interest in one of the properties to Leighton and Leighton would transfer his interest in the other property to her. After the documents were created, however, Leighton refused to sign them.

Shortly after signing the August 26 contract, Leighton and Rebeles entered into an oral agreement whereby Leighton would sell sand, gravel, and other materials from properties he leased mixed with materials from one of the properties he owned with Rebeles. Rebeles agreed to perform the billing and clerical work through her separate company, American Materials, in exchange for one-third of the profits from the sales. Eventually, a dispute arose between the two about the amount of money Rebeles owed Leighton as his share of the profits.

Rebeles brought this suit alleging, among other things, that she and Leighton had formed a partnership during the time they lived together and requested the trial court to supervise a winding up of the partnership business including a division of the partnership assets. Leighton responded to the suit asserting affirmative defenses including the defense of release. In addition,

---

[1] The notarization indicates that the agreement was not signed by the parties until September 5, 2006.

Leighton counterclaimed for the money he alleged was owed to him under his oral contract with Rebeles to sell sand and gravel through American Materials.

The case was tried to a jury. The jury found that Leighton and Rebeles formed a partnership in 1984 and that an event requiring a winding up of the partnership occurred in August or September of 2006. The jury further found that Rebeles did not withdraw from the partnership, nor did she release her claim in the partnership assets. Finally, the jury found that Rebeles breached her oral contract with Leighton and that Leighton was entitled to $31,000 in damages.

Both Leighton and Rebeles filed motions challenging the jury's findings. Leighton asked the court to disregard the jury's findings on the partnership issues because, among other things, he argued the August 26 contract constituted a release of Rebeles's claims to the partnership assets. Rebeles asked the trial court to hold that Leighton take nothing by his breach of contract claim because she argued that claim was "subsumed" in the jury's partnership findings. Rebeles contended that the subject matter of the contract was part of the partnership business and had to be treated as such. The trial court determined, in accordance with the jury's findings, that Rebeles and Leighton had formed a general partnership. Then, in protracted post-verdict proceedings punctuated by four interlocutory orders, some of which were appealed,[2] the court wound-up the partnership and divided the partnership assets between them. The trial court concluded the case by incorporating its rulings on the verdict and post-verdict winding-up of the partnership in a final judgment, including disregarding the jury's finding on Leighton's breach of contract claim and ordering that he take nothing by his counterclaim. Leighton brings this appeal.

---

[2] *See Leighton v. Rebeles*, 343 S.W.3d 270 (Tex. App.—Dallas 2011, no pet.); *Leighton v. Rebeles*, 05-11-00717-CV, 2012 WL 438914 (Tex. App.—Dallas Feb. 10, 2012, no pet.)

## ANALYSIS

### I. Effect of the August 26 Contract

In his first point of error, Leighton contends that Rebeles released any claim she had to the alleged partnership assets by the agreement she signed dated August 26, 2006. Leighton does not challenge the jury's finding that a partnership existed. He argues only that the August 26 contract is unambiguous and, by its terms, Rebeles released all interest she held in the partnership as a matter of law. Alternatively, Leighton argues there is legally and factually insufficient evidence to support the jury's adverse verdict that the agreement did not constitute a release of Rebeles's partnership interest. Rebeles responds that nothing in the language of the contract demonstrates her intent to relinquish her claim to her share of the partnership assets and there was legally and factually sufficient evidence for the jury to conclude that she had not released her claim.

A release is a contract governed by the rules of contract construction. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the language of the agreement. *See Stroop v. Northern Cnty. Mut. Ins. Co.*, 133 S.W.3d 844, 851 (Tex. App.—Dallas 2004, pet. denied). Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). A court should construe a contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served. *Id.* at 530. We need not embrace strained rules of construction that would avoid ambiguity at all costs. *Id.*. We must avoid, when possible and proper, construing a contract in such a way that it is unreasonable, inequitable, and oppressive. *Id.* We will not declare a forfeiture unless the language of the contract compels that result because it cannot be construed any other way. *Id*

If a contract can be given a certain or definite legal meaning, it is not ambiguous and should be construed as a matter of law. *See El Paso Field Services, L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). A contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Id*. If a contract is ambiguous, a fact issue is created on the parties' intent. *Id*.

The contract at issue is a single sentence stating that, in exchange for $150,000, Rebeles agrees to "relinquish all past, present, and future interest" in the two businesses that were operated by the partnership. Leighton contends that, as a matter of law, the August 26 contract released all of Rebeles's claims to the partnership assets. However, the agreement only names the businesses being operated by the partnership and makes no reference to the partnership itself. Leighton has conceded, and the evidence shows, that neither he nor Rebeles believed the contract had any effect on Rebeles's interest in the land they owned jointly and on which they operated the partnership businesses named in the release. As the businesses were mining operations, the land constituted a substantial portion of the partnership's assets. Both parties presented parol evidence at trial as to their intent and the meaning of the language in the contract, thereby essentially treating the contract as ambiguous. Because the language of the contract does not identify the partnership or the partnership's relationship to the businesses named, and neither party understood the contract to resolve ownership of at least some of the partnership's significant assets, we conclude the contract is ambiguous and does not clearly evidence an intent that Rebeles surrender her interest in the partnership itself or all of the partnership's assets.

Having concluded the contract is ambiguous, we must now determine whether there is legally and factually sufficient evidence to support the jury's finding that the contract was not intended as a release of Rebeles's claim. In determining whether the evidence is legally sufficient, we consider whether the evidence at trial would enable reasonable and fair-minded

people to reach the verdict under review crediting favorable evidence to the verdict if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). In reviewing the factual sufficiency of evidence, we review all the evidence in support of and against the trial court's finding and will set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001). For both analyses, we bear in mind that, "[j]urors are the sole judges of the credibility of the witnesses and the weight to give their testimony." *Thota v. Young*, 366 S.W.3d 678, 695 (Tex. 2012) (quoting *City of Keller*, 168 S.W.3d at 819).

The evidence before the jury included testimony that Leighton and Rebeles intended the contract as a means of distancing themselves in their business activities after the deterioration of their personal relationship. Rebeles testified that, at the time she signed the contract, she understood it would provide her with money to operate American Materials in exchange for relinquishing her involvement in Paul's Pit and Hutchins Sand & Gravel. She also understood that she would have a separate bank account for American Materials and would no longer receive income from the businesses operated by Leighton. Rebeles stated that the $150,000 represented only a portion of her and Leighton's attempt to separate their business activities and that she requested some of the other partnership assets, such as heavy equipment and a deed to one of the properties, to allow her to operate independently.

Leighton also testified that the $150,000 was intended to allow Rebeles to start her own business. He viewed the $150,000 as a "severance package" that terminated her employment with Paul's Pit and Hutchins Sand & Gravel. As noted above, neither party believed the contract

had any effect on their joint ownership of the land and minerals that formed the basis of the partnership businesses. Leighton acknowledged that he refused to sign the paperwork that would have separated their interests in those properties.

Based on the testimony of the parties, we conclude there is legally and factually sufficient evidence for the jury to find that the August 26 contract was not intended as a release of Rebeles's claim to the partnership assets. The jury could have reasonably interpreted the contract as merely the first step in the attempted separation of the partners' business dealings as Rebeles testified. We resolve Leighton's first issue against him.

## II. Trial Court's Disregard of Jury Finding

In his second issue, Leighton contends the trial court erred in disregarding the jury's finding in his favor on his breach of contract claim. Rebeles moved the court to disregard the finding on the ground that it was "subsumed" by, and irreconcilable with, the jury's partnership finding. In essence, Rebeles contends that the jury's partnership finding necessarily encompassed her and Leighton's continued business relations after the August 26 contract including the oral agreement for mining one of the properties billed through American Materials, Rebeles's separately managed business. Because such activity was part of the partnership's business, Rebeles reasons, it could not constitute a separate contract subject to breach. Leighton argues the breach of contract finding is easily reconcilable with the partnership finding in that the jury could have concluded that the agreement was made outside the partnership. We agree.

A trial court has the duty to harmonize the jury's findings whenever possible, and it may not strike answers because of an alleged conflict if there is any reasonable basis on which they can be reconciled. *See Beltran v. Brookshire Grocery Co.*, 358 S.W.3d 263, 268 (Tex. App.—Dallas 2011, pet. denied). Every finding is of equal importance and one finding cannot be varied by the interpretation of another finding of equal dignity. *See Hancock v. Sammons*, 267 S.W.2d

252, 257 (Tex. App.—Fort Worth 1954, writ ref'd n.r.e.). A jury finding may not be disregarded unless it is unsupported by the evidence or the issue is immaterial. *See Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex. 1994).

Here, Rebeles does not contend, and the record does not show, that the jury's finding in favor of Leighton on his breach of contract claim was either unsupported by the evidence or immaterial. Furthermore, the finding that Rebeles breached the oral agreement does not conflict with the finding that Rebeles and Leighton formed a partnership. The jury could have concluded that Leighton and Rebeles were not acting as agents of the partnership when they entered into the agreement, but were instead representing their own independent interests. Because the findings can be reconciled, the trial court erred in failing to grant judgment in favor of Leighton on his breach of contract claim in accordance with the jury's verdict. We resolve Leighton's second issue in his favor.

Based on the foregoing, we reverse the portion of the trial court's judgment ordering that Leighton take nothing on his claim for breach of contract. We render judgment that Leighton recover $31,000 from Rebeles, as awarded by the jury, along with postjudgment interest at a rate of 5% per annum from and after October 31, 2011. *See* TEX. FIN. CODE ANN. § 304.003 (West 2006). In addition, we render judgment awarding Leighton attorney's fees, as stipulated by the parties, in the amount of $20,000 at the trial court level, $10,000 for the appeal to this Court, and an additional $10,000 in the event of an appeal to the Texas Supreme Court. In all other respects, the trial court's judgment is affirmed.

111519F.P05

/David W. Evans/
_____
DAVID W. EVANS
JUSTICE

–9–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PAUL MICHAEL LEIGHTON, Appellant

No. 05-11-01519-CV      V.

ELIZABETH REBELES, Appellee

On Appeal from the 14th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 08-11357-A.
Opinion delivered by Justice Evans.
Justices Francis and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED IN PART** and judgment is **RENDERED** that Paul Michael Leighton recover $31,000 in accordance with the jury's verdict along with postjudgment interest at a rate of 5% per annum from and after October 31, 2011. In addition, judgment is **RENDERED** that Paul Michael Leighton recover from Elizabeth Rebeles attorney's fees as stipulated by the parties in the amount $20,000 at the trial court level, $10,000 for the appeal to this Court, and an additional $10,000 in the event of an appeal to the Texas Supreme Court. In all other respects, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of April, 2013.

/David W. Evans/
DAVID W. EVANS
JUSTICE