**Mary Martha DOWNING, Appellant,**

v.

**Mark D. LARSON, M.D., P.A., and Mark D. Larson, M.D., Appellees.**

**No. 09–04–167–CV.**

Court of Appeals of Texas, Beaumont.

Submitted Oct. 21, 2004.

Decided Dec. 22, 2004.

Toby C. Easley, Jeffrey R. Matthews, Houston, for appellant.

J.B. Whittenburg, Mike L. Painter, Orgain, Bell & Tucker, LLP, Beaumont, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

**OPINION**

STEVE McKEITHEN, Chief Justice.

Mary Martha Downing sued Mark D. Larson, M.D., P.A., and Mark D. Larson, M.D., (collectively, "Larson") for medical malpractice in the performance of an open reduction/ internal fixation of a left orbital blow-out fracture. Downing alleged Dr. Larson was negligent in performing two surgeries to correct the entrapment of the inferior rectus muscle in her left eye. We hold the trial court erred in striking the plaintiff's expert evidence, and reverse the summary judgment.

A "no evidence" motion for summary judgment challenged the qualification of the appellant's expert plastic surgeon and her evidence of causation. See Tex.R. Civ. P. 166a(i). Larson argued that Martin L. Bell, M.D., is not familiar with the standard of care applicable to a board certified plastic surgeon using a Synthes mesh to repair an orbital blowout fracture because it has been over fifteen years since Dr. Bell has treated an orbital blowout fracture and he has never used Synthes mesh. The appellees based the causation argument on Dr. Bell's testimony that he does not know whether Downing has any residual problems due to the surgeries done by Dr. Larson and on his admission that some residual can remain even when the surgery is done properly.

In response, Downing submitted a telefacsimile affidavit from Dr. Bell, the doctor's medical report and curriculum vitae, and thirty-six pages from his deposition. She also included eight pages of Dr. Larson's deposition. The appellees obtained a favorable ruling on their objections to Downing's summary judgment evidence,

and the trial court struck the opinions and testimony of Dr. Bell, effectively leaving the plaintiff without any evidence with which to satisfy Rule 166a(i). On appeal, Downing argues that the trial court erred in striking her evidence.

■ The appellees raised six objections to Downing's evidence. First, Larson objected to a copy of the affidavit. A duplicate is admissible to the same extent as an original unless a question is raised as to the authenticity of the original or circumstances would make it unfair to admit the duplicate. Tex.R. Evid. 1003. Downing supplied the original affidavit in response to Larson's objection to the facsimile. Therefore, the exclusion of the appellant's summary judgment evidence is not affirmable on this ground.

■ Second, the appellees contend Dr. Bell's opinions were conclusory because they do not reveal his reasoning, the proper standard of care, how the standard was breached, and how the breach was a cause of damages. To raise a fact issue sufficient to defeat a no-evidence summary judgment in a medical malpractice case, the controverting expert evidence must identify the standard of care, establish the expert's familiarity with that standard, and explain why the treatment rendered by the doctor breached the applicable standard of care. *Silvas v. Ghiatas,* 954 S.W.2d 50, 53 (Tex.App.-San Antonio 1997, writ denied). In his report and in deposition, Dr. Bell opined that in the first surgery, Dr. Larson failed to completely delineate the full extent of the fracture and to dissect and cover the posterior aspect of the fracture with the implant, so as to prevent residual or recurrent entrapment of the orbital muscle. The report observes Downing's post-operative symptoms and the CT scan that revealed a "persistent bony defect behind the metal plate with continued partial entrapment of muscle." Dr. Bell's re-

port also expresses his opinion that in the second surgery, Dr. Larson dissected the orbital floor more extensively and observed no entrapment, but he failed to replace the implant into the orbital floor to protect against recurrent entrapment postoperatively. The report notes that Dr. Larson "did not note any entrapment of muscle." Dr. Bell describes a third surgery by a new doctor, who "encountered dense scar tissue along the orbital floor and around the inferior rectus muscle" and "discovered that the fractured bone fragments in the back of the orbit were not separated, and so he removed some fragments o bone." He reports that the third surgery substantially improved the appellant's vision. Dr. Bell explained with particularity what the standard of care was and explained how Dr. Larson failed to meet it and how damage resulted. Thus, the evidence is not conclusory for the reasons asserted by the appellees.

■ Third, Larson claimed a particular deposition excerpt consisted of hearsay because the opinion of Dr. Bell was based upon the opinion of Dr. Rudasill, a person whose affidavit was not attached. The deposition excerpt consists of Dr. Bell's testimony that he had been apprised of Dr. Rudasill's report that day, and that he had not been apprised of the report when he prepared his expert report, but that the Rudasill report suggests Downing's injury is permanent. Downing supplied Dr. Rudasill's report in a court-authorized supplement. Therefore, the exclusion of the appellant's summary judgment evidence is not affirmable on this ground.

■ Fourth, Larson objected that certain opinions articulated by Dr. Bell during the deposition were inadmissible because they had been adduced through leading questions by Downing's attorney. Counsel for Larson did not object to the questions

on the ground that they were leading, as required by rule. Tex.R. Civ. P. 199.5(e). On appeal, Larson suggests that counsel had agreed that an objection to form would cover all objections in the depositions. No such agreement appears in the record, and the appellees do not cite us to where it might be located. The exclusion of the appellant's summary judgment evidence is not affirmable on this ground.

■ Fifth, Larson challenged Dr. Bell's qualifications as an expert. The appellees contend Downing failed to meet the burden of proving that Dr. Bell meets the requirements of Section 14.01, Article 4590i of the Texas Revised Civil Statutes. That article, since repealed, provided as follows, in pertinent part:

(a) In a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

(b) For the purpose of this section, "practicing medicine" or "medical practice" includes, but is not limited to, training residents or students at an accredited school of medicine or osteopathy or serving as a consulting physician to other physicians who provide direct patient care, upon the request of such other physicians.

(c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and

(2) is actively practicing medicine in rendering medical care services relevant to the claim.

See Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01, 1995 Tex. Gen. Laws 985, 988, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.401 (Vernon Supp.2005)).

Dr. Bell's curriculum vitae reveals that he is a 1967 cum laude graduate of Boston University School of Medicine; that he was on staff at Tulane University Hospital from 1975 to 1997; that since 1997 he has been on staff at a hospital in Arizona; that he is currently an assistant clinical professor of plastic surgery at Tulane; that he holds certifications from the American Board of Surgery (1974), the American Board of Plastic and Reconstructive Surgery (1976), and the American Board of Cosmetic Surgery (1986); that he holds medical licenses in Louisiana, Massachusetts, California, Arizona, and the Netherlands; that he was formerly chief of plastic surgery at two medical centers; and that he is currently practicing in Scottsdale, Arizona. Together with his affidavit and deposition testimony, the curriculum vitae establishes that Dr. Bell is a licensed physician, board certified in plastic and reconstructive surgery, and actively practicing medicine when the claim arose. He ex-

pressed knowledge of the accepted standards of medical care for the diagnosis, care, or treatment of the injury involved in the claim. Thus, the trial court's ruling is not sustainable upon the ground that Dr. Bell failed to meet the criteria of Section 14.01, Article 4590i.

■ Lastly, the appellees contend Dr. Bell has not done the surgery performed by Dr. Larson in over fifteen years, has never performed the surgery using the mesh used by Dr. Larson, and admitted there have been changes in the procedure since the time when he was performing the surgeries. In the course of his deposition, Dr. Bell explained that he does not use the brand of implant used by Dr. Larson; he uses a silicone implant with a Dacron mesh. He has not personally performed the surgery in fifteen years. He explained

> Like many plastic surgeons, as you progress in practice, you tend to go from reconstructive surgery into cosmetic surgery. And since facial fractures tend to be emergency cases at all hours of the day and night, you get younger associates who come in with you and they do it and that's basically the progression of my practice.

Dr. Bell explained the changed procedure referred to by the appellees. The practice at that time was to wait two weeks to perform the surgery; now, the consensus is to act as quickly as possible if there is actual entrapment. Dr. Bell explained that doctors in several specialties treat orbital fractures, and that oculoplastic surgeons who are ophthalmologists and oral maxillofacial surgeons tend to intervene earlier than plastic surgeons.

The appellees argue Dr. Bell fails to meet the Section 14.01 criteria that the expert be "actively practicing medicine in rendering medical care services relevant to this claim" because he has not personally performed the operation. Section 14.01

does not require that the expert personally perform the operation in question. In fact, the statute expressly provides that teaching and consultation with physicians providing direct care constitute practicing medicine.

The appellees argue, "Synthes mesh implants are made by a different material than the type of implants used by Dr. Bell and have different mesh, thus requiring different standards of care as to the usage, placement and removal." According to Dr. Bell, "Synthes" is merely a brand name, and Dr. Bell testified that he has used numerous implants. We find no summary judgment evidence in the record supporting an argument that there is a significant distinction between the two implants, or that a different standard of care would apply if that particular brand of implant were used.

■ The test for admissibility of an expert's testimony is whether the proponent established that the expert possesses knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex.2003) (quoting *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)). Downing's expert had extensive experience and expertise in the procedure performed by Dr. Larson, was actively practicing in the pertinent specialty when the treatment was provided and at the time he provided the affidavit, and met the criteria expressed in Article 4590i, Section 1401, and Tex.R. Evid. 702. Thus, none of the grounds asserted for striking the appellant's summary judgment evidence were meritorious. We hold striking the plaintiff's expert's evidence was an abuse of the trial court's discretion. Issue two is sustained.

The judgment of the trial court is reversed. We remand the case to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

GAULTNEY, Justice, dissenting.

DAVID GAULTNEY, Justice, dissenting.

In determining whether an expert is qualified to offer an expert opinion, the trial court serves as the evidentiary gatekeeper. See *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 553–54, 556–58 (Tex.1995). In cases like this, the legislature has specified that the trial court shall consider whether a medical expert "is actively practicing medicine in rendering medical care services relevant to the claim."[1] It is undisputed that Dr. Bell is not currently performing the type of surgery involved in this claim. It is not an abuse of discretion for the trial court to rely on a consideration mandated by statute.

Rather than immediately granting the no-evidence summary judgment, the trial court could have provided the plaintiff an opportunity to replace the witness with someone whose expertise is current. See Tex R. Civ. Proc. 166(a)(i). Appellant raised no issue at the trial court or on appeal requesting that relief. I therefore respectfully dissent from the reversal of the trial court's judgment.

---

1. See Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 2, sec. 14.01, 1995 Tex. Gen. Laws 985, 988, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem.Code Ann. § 74.401 (Vernon Supp.2005)). References