**Affirmed and Opinion Filed May 24, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01226-CV**

**NIZARALI LALANI, AN INDIVIDUAL, A/K/A NICK LALANI, Appellant**
**V.**
**DEVELOPMENT SWC 121/423, L.P., SUCCESSOR-IN-INTEREST TO**
**SWC 121/143, L.P., Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-01108-2022**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

In this lawsuit arising from a breach of lease, appellant-tenant complains the trial court erred in granting appellee-landlord's traditional motion for summary judgment. Appellant complains the trial court erred by (1) admitting certain evidence, (2) granting summary judgment despite genuine issues of material fact concerning damages and his affirmative defense of release, and (3) awarding attorney's fees in an amount not fully supported by evidence. We affirm the trial court's judgment.

## BACKGROUND

Appellee Development SWC 121/423, L.P., successor-in-interest to SWC 121/423, L.P., terminated the shopping center lease of appellant Nizarali Lalani due to nonpayment of rent.[1] Appellee filed this lawsuit against appellant. Appellee alleged breach of contract. Appellee sought actual damages, reasonable attorney's fees, post-judgment interest, and costs of court.

Appellant's answer included a general denial. It also included affirmative defenses, including release, waiver, laches, limitations, estoppel, and accord and satisfaction.

Appellee filed a traditional motion for summary judgment. It alleged two grounds for relief: breach of lease and attorney's fees. Appellant filed responses to appellee's motion. The responses asserted evidentiary objections, that appellee had been released from appellee's claims, and that fact issues existed concerning damages and attorney's fees. Appellee filed replies to appellant's responses. Appellant filed objections to appellee's summary judgment evidence. The trial court overruled the objections.

---

[1] The trial court's docket sheet and final judgment in the instant case identify appellee as "Development SWC 121/423, L.P., Successor-In-Interest to SWC 121/143, L.P." In this Court, both parties refer in the body of their briefs to appellee as "Development SWC 121/423, L.P., Successor-In-Interest to SWC 121/423, L.P." We follow the parties' practice in the body of this memorandum opinion and refer to appellee as "Development SWC 121/423, L.P., Successor-In-Interest to SWC 121/423, L.P."

The trial court signed an order granting appellee's motion for summary judgment. The trial court awarded appellee $351,030.79 in damages. It awarded appellee $3,774.00 in attorney's fees and also awarded conditional post-judgment and appellate attorney's fees. It awarded appellee post-judgment interest and costs.

Appellant filed a notice of appeal. This appeal followed.

## STANDARD OF REVIEW

We review de novo the trial court's granting a motion for summary judgment. *See Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In conducting our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Ortiz*, 589 S.W.3d at 131 (quoting *Valence Operating Co.*, 164 S.W.3d at 661).

A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Ortiz*, 589 S.W.3d at 131; *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant does so, the burden then shifts to the nonmovant to raise a genuine issue of material fact. *See Lujan*, 555 S.W.3d at 84. A genuine issue of material fact exists if the evidence regarding the challenged element "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v.*

*Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The evidence does not create an issue of material fact if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *See id.*

After the movant conclusively establishes each element of its claim, the non-movant must come forward with summary judgment evidence sufficient to raise a fact issue on each element of its affirmative defenses to avoid summary judgment. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Torres v. Unauthorized Prac. of Law Comm. for the Supreme Court of Tex.*, No. 05-21-00651-CV, 2022 WL 4115487, at *5 (Tex. App.—Dallas Sept. 9, 2022, no pet.) (mem. op.).

## EVIDENTIARY RULINGS

Appellant states his first issue as follows,

Was the Palmer affidavit admissible evidence, when it failed to identify the records attached as evidence to the motion?

Appellant makes two main arguments. He argues a declaration attached to appellee's motion for summary judgment "fails to identify the specific records meeting the required elements of business records kept in the normal course of business." Moreover, he argues appellee's "tenant obligation sheet is actually a non-admissible economic damages report or defective summary to prove content under Texas Rule of Evidence 106."[2]

---

[2] The tenant obligation sheet is attached to the declaration of David Palmer in support of appellees's motion for summary judgment. It identifies appellee as landlord and appellant as tenant. It states a "balance through February, 2011" of $236,165.59. It states: "Note: This figure includes a credit of $190,000.00 in settlement

–4–

## BUSINESS RECORDS

First, we address appellant's contention that the trial court erred by overruling his objection to the business records declaration of David Palmer. Palmer is a vice president of Weitzman Management Corporation, which managed the leased property. His declaration and its attached documents were offered to prove breach of lease and appellee's damages.

### Standard of Review and Applicable Law

We review the trial court's admission or exclusion of summary judgment evidence for abuse of discretion. *See Theatre of Legacy L.P. v. Shops at Legacy (RPAI) L.P.*, No. 05-22-00874-CV, 2023 WL 6284711, at *2 (Tex. App.—Dallas Sept. 27, 2023, no pet.) (mem. op.). A trial court abuses its discretion when it acts without reference to guiding rules and principles. *See U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). We uphold the trial court's decision admitting or excluding evidence if there is any legitimate basis for the ruling. *See Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 264 (Tex. 2012).

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d). Hearsay is inadmissible unless a rule or statute authorizes its

---

funds received from the assignor of the original Lease." Under the heading, "Replacement Tenant," it provides calculations and amounts for interim rental, unamortized brokerage commissions on replacement tenant, finish-out reimbursement for replacement tenant, and rent differential. It states a "total obligation" of $351,030.79.

admission. *See* TEX. R. EVID. 802. Otherwise inadmissible hearsay may be admitted into evidence if it meets the hearsay exception for business records. *See* TEX. R. EVID. 803(6). Under that exception, a business record may be admissible if its proponent demonstrates that (1) the records were made and kept in the course of a regularly conducted business activity, (2) it was the regular practice of the business activity to make the records, (3) the records were made at or near the time of the event that they memorialize, and (4) the records were made by a person with knowledge who was acting in the regular course of business. *See In re E.A.K.,* 192 S.W.3d 133, 141 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also* TEX. R. EVID. 803(6).

The predicate for admission of business records may be established by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10). *See* TEX. R. EVID. 803(6)(D). Rule 902(10)(B) provides a form affidavit and states an affidavit is sufficient if it includes the form's language; however, the form's language is not exclusive.[3] Additionally,

---

[3] TEX. R. EVID. 902(10)(B). The form provides:

1. I am the custodian of records [*or* I am an employee or owner] of ___ and am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities.

2. Attached are ___ pages of records. These are the original records or exact duplicates of the original records.

documents received by a second company may constitute admissible business records upon proof that (1) the records were incorporated and kept in the course of the second company's business, (2) the second company typically relies upon the accuracy of the records' contents, and (3) the circumstances otherwise indicate the documents' trustworthiness. *See Theatre of Legacy L.P.*, 2023 WL 6284711, at *3; *Diaz v. Multi Serv. Tech. Sols. Corp.*, No. 05-17-00462-CV, 2018 WL 6521916, at *8 (Tex. App.—Dallas Dec. 12, 2018, no pet.) (mem. op.) (cting *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240-41 (Tex. App.—Houston [1st Dist.] 2010, no pet.)).

## Palmer's Declaration

Palmer's declaration includes the following facts. Palmer is employed as a vice president of Weitzman Management Corporation. As part of his duties with Weitzman, he is "a custodian of records for Weitzman with respect to the property

---

3. The records were made at or near the time of each act, event, condition, opinion, or diagnosis set forth. [*or* It is the regular practice of ___ to make this type of record at or near the time of each act, event, condition, opinion, or diagnosis set forth in the record.]

4. The records were made by, or from information transmitted by, persons with knowledge of the matters set forth. [*or* It is the regular practice of ___ for this type of record to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them.]

5. The records were kept in the course of regularly conducted business activity. [*or* It is the regular practice of ___ to keep this type of record in the course of regularly conducted business activity.]

6. It is the regular practice of the business activity to make the records.

TEX. R. EVID. 902(10)(B) (emphases in original).

located in Denton County, Texas, which is the subject matter of this litigation." Documents attached to the declaration are true and correct. He has personal knowledge of the matters stated in the declaration and they are true and correct. He is familiar with the manner and method in which Weitzman maintains its books and records. Weitzman keeps and receives the books and records in the regular course of its business. It is the regular course of Weitzman's business for an employee with personal knowledge of each transaction or event to make a record of the transaction or event at or near the time of the transaction or event. The books and records are maintained by employees and agents whose duty it is to maintain the books and records accurately and completely. He reviewed Weitzman's books and records, including the lease, involved in the lawsuit. He is authorized to make the declaration, which is offered in support of appellee's motion for summary judgment. Weitzman is the management company employed by appellee with respect to the leased premises in this lawsuit. Among its duties to appellee, Weitzman is required to, and does, maintain the books and records for appellee with respect to the premises involved in this lawsuit.

## Analysis

Appellant mainly argues Palmer's declaration is insufficient because it "merely reads that the records of Weitzman in general are kept in the regular course of business and that events and transactions broadly are recorded at or near the time of their occurrence—without indicating which specific business records this applies

to or which documents are considered business records." However, the form affidavit provided in Rule 902(B), quoted above, does not require an affidavit or declaration to identify or describe specific records, as appellant contends. *See* TEX. R. EVID. 902(B) (providing that an affidavit or declaration is sufficient if it includes the form affidavit's non-exclusive language). Rule 902(B)'s form affidavit refers generally to "records" rather than to specifically described records. *See id.* Consequently, we conclude the declarations reference to "records" is sufficient and does not fail due to lack of reference to "specific records."[4] *See id.*

Additionally, appellant asserts, "Mr. Palmer testifies that he works for Weitzman f/k/a Cencor Realty Services, a third-party company, but does not explain sufficiently how he is able to authenticate records for Plaintiff[.]" In support of his argument, he asserts, "A management agreement between Weitzman and Plaintiff is not attached" to Palmer's declaration. However, the declaration states appellee employed Weitzman to keep its books and records and to manage the property and that Palmer, Weitzman's employee, was custodian of records. We conclude the declaration sufficiently explains that Palmer "was able" to authenticate appellee's records pursuant to Rule 902(10). *See* TEX. R. EVID. 902(10).

---

[4] For this reason, we also reject appellant's complaints that Palmer's declaration does not specifically identify or address other documents attached to the declaration, such as a "receivables ledger" and an "aged delinquencies report."

Moreover, appellant states—in a single sentence and without analysis—that, "Mr. Palmer's personal knowledge of the facts is not established[.]" However, Palmer declares that the statements made in his declaration are based on his personal knowledge, and the declaration supports a conclusion that he acquired personal knowledge as a result of his employment and workplace duties. The requirement that summary judgment declarations be made on personal knowledge is satisfied by an affirmative showing in the declaration of how the declarant became personally familiar with the facts so as to be able to testify as a witness. *See Calstar Prop., L.L.C. v. Rollins Acceptance Co.*, No. 02-02-00266-CV, 2003 WL 21357559, at *2 (Tex. App.—Fort Worth, June 12, 2003, no pet.) (mem. op.). A person's position or job responsibilities can peculiarly qualify him to have personal knowledge concerning each of the facts in the supporting declaration. *See id*. The statements in Palmer's declaration, described above, were adequately shown to have been based on his personal knowledge. *See id.*

Additionally, appellant argues records attached to the declaration are unreliable or untrustworthy, and therefore inadmissible. First, he argues that a $190,000 settlement payment to appellee is reflected in one document attached to Palmer's declaration, the tenant obligation sheet, but not in two other attached documents, an accounts receivable ledger and an aged delinquencies report. The latter two documents set forth payments and non-payments in detail. He argues none of the three documents "show a clear record of such payment or any credit clearly

corresponding to such $190,000 payment." However, appellant did not make a $190,000 payment to appellee. Rather, a defendant in another lawsuit to which appellant was not a party made the payment to appellee pursuant to a release agreement to which appellant was not a signatory. Consequently, the $190,000 payment by a third party is not reflected in the accounts receivable ledger and the aged delinquencies report, which document payments made by *appellant* to appellee. Therefore, the fact that records of appellant's payments do not reflect the $190,000 paid by another party does not demonstrate that records of appellant's payments are untrustworthy.

Second, appellant argues appellee's records are untrustworthy or unreliable because the settlement agreement that provided for the $190,000 payment was not attached to Palmer's declaration. Appellee fails to cite a judicial opinion that requires underlying documents, such as the settlement agreement, to be attached to a declaration in order to support every entry of every record attached to declarations or affidavits. Rule 902(10) does not state such a requirement. *See* TEX. R. EVID. 902(10). Consequently, we reject appellant's assertions that the documents attached to Palmer's declaration are untrustworthy or unreliable.

Appellant complains some entries in the receivable ledger and aged delinquencies report are severely deficient. He argues, "For many line items it is difficult to decipher what the line item or claimed charge corresponds to." However, he does not identify any such entry in his summary judgment declaration or in his

–11–

appellate brief. We are not responsible for searching the record for facts that may be favorable to a party's position. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.). Were we to do so, we would be abandoning our role as judges and become an advocate for that party. *See id.* Accordingly, we reject appellant's argument.

Finally, appellant concludes appellee's ledger sheet is severely deficient because his tenancy began before August 2019 but the ledger sheet only details charges and payments from August 2019 and thereafter. However, he makes no attempt to support his statement with argument. He simply describes a document. Rule 38.1(i) of the Texas Rules of Appellate Procedure requires appellant's brief to guide us through appellant's argument with clear and understandable statements of the contentions being made. *See Bolling*, 315 S.W.3d at 896; *see also* TEX. R. APP. P. 38.1(i). If we must speculate or guess about what contentions are being made, appellant's briefing fails. *See Bolling*, 315 S.W.3d at 896; *see also* TEX. R. APP. P. 38.1(i). Appellant fails to provide clear and understandable statements of his possible contentions. That failure is fatal to appellant's unstated and unknown contention, if any, concerning lack of entries on the ledger. *See Bolling*, 315 S.W.3d at 896; *see also* TEX. R. APP. P. 38.1(i).

## Conclusion

Appellant's arguments do not demonstrate the trial court abused its discretion in admitting Palmer's declaration and its attached business records.

## THE OBLIGATION SHEET

As major sub-arguments of his first point of error, appellant argues the tenant obligation sheet, attached to Palmer's declaration, could be considered to be an inadmissible expert report or an inadmissible summary of evidence.[5]

First, appellant asserts the tenant obligation sheet "essentially substitutes as an expert economist report" and is "similar in respects to an expert witness report." Appellant then attacks the document as if it were, in fact, an expert report. In support of his argument, appellant quotes two judicial opinions, *Downing v. Larson*, 153 S.W.3d 248, 253 (Tex. App.—Beaumont 2004, *rev'd*, 197 S.W.3d 303 (Tex. 2006) (per curiam), and *Whirlpool Corp. v. Camacho,* 298 S.W.3d 631, 642 (Tex. 2009). However, appellant's cited judicial opinions in no way suggest the obligation sheet is an expert report. Nor do we understand appellant to literally represent the document to be an expert report. Consequently, we reject appellant's argument that the obligation sheet was inadmissible due to vaguely asserted failures of the document to satisfy the requirements of an expert report.

Second, appellant asserts, "The Tenant Obligation Sheet may alternatively be considered to be a defective summary to prove content under Rule 106 of the Texas Rules of Evidence."[6] Rule 1006 provides,

---

[5] We described the tenant obligation sheet above.

[6] Appellant expressly bases his argument on Texas Rule of Evidence 106. That rule addresses introduction of a remainder of or related writings or recorded statements that in fairness ought to be considered when

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

TEX. R. EVID. 1006.

Appellant first argues Rule 1006 "requires that the contents of the voluminous writings regarding which the summary is made to be otherwise admissible." Appellant argues documents attached to Palmer's declaration are inadmissible "[f]or reasons shown in this response." However, we have considered and rejected, above, appellant's arguments concerning admissibility of the documents attached to Palmer's declaration and do not repeat our analysis here.

Second, appellant argues the tenant obligation sheet is inadmissible because, "[T]he [Rule 1006] summary to prove contents must be authenticated, generally requiring the preparer of the report to testify regarding matters relating to the report's preparation." Appellant ignores precedent of this Court which distinguishes summaries under Rule 1006 and business records that are independently admissible under Rule 803(6). For example, in *Lakepointe Pharmacy #2, LLC v. Forney Deerval, LLC*, No. 05-19-01224-CV, 2021 WL 248667, at *5 (Tex. App.—Dallas Jan. 26, 2021, pet. denied) (mem. op.), this Court noted the distinction,

---

another party introduces evidence. *See* TEX. R. EVID. 106. Construing appellant's argument as a whole, we conclude appellant bases his argument on Texas Rule of Evidence 1006. That rule addresses "summaries to prove content." *See* TEX. R. EVID. 1006.

> However, *Duncan Development, Inc. v. Haney* dealt with a summary of invoices from its "some three dozen subcontractors" **that was prepared for trial purposes**; whereas, here, we are dealing with two computer printout summary/breakdowns that, although each is a summary of underlying business records (labor and materials records), **are themselves business records.** Therefore, the computer printouts were entitled to be treated as business records, and not as a summary of business records for trial purposes.

*Id*. (emphases in original) (citing *McAllen State Bank v. Linbeck Constr. Corp.*, 695 S.SW.2d 10, 16 (Tex. App.—Corpus Christi-Edinburg 1985, writ ref'd n.r.e.)). In *Lakepointe Pharmacy #2, LLC*, this Court rejected the argument that business records "lacked the foundation necessary to support admissibility of a data compilation or summary business record" and instead concluded the challenged exhibits "are themselves business records"—admissible because the landlord offered evidence to establish the foundation required by Texas Rule of Evidence 803(6). *Id.* at *3, 6. Similarly, in *Curran v. Unis*, 711 S.W.2d 290, 292-95 (Tex. App.—Dallas 1986, no writ), this Court concluded a company's income tax returns were admissible as business records "and not just as summaries of business records." We follow this Court's precedent, *Lakepointe Pharmacy #2, LLC* and *Curran*, and conclude the obligation sheet was admissible as a business record, Texas Rule of Evidence 1006 notwithstanding. We reject appellant's invitation to "consider" the business records as an inadmissible Rule 1006 summary.

We conclude the trial court did not abuse its discretion in admitting the obligations sheet.

CONCLUSION

We overrule appellant's first appellate issue.

**DAMAGES**

Appellant states his second issue as follows,

Does Lalani's affidavit raise a genuine issue of material fact as to damages when it specifically identified inaccuracies in SWC's damage calculations?

First, we address appellant's argument that appellee failed to offset any amount for appellee's sale of appellant's personal property. "The burden of pleading offset and of proving facts necessary to support it are on the party making the assertion." *SAS & Assocs., Inc. v. Home Mktg. Servicing, Inc.*, 168 S.W.3d 296, 301(Tex. App.—Dallas 2005, pet. denied). The right of offset is an affirmative defense. *See Ramirez v. Sccaffetti*, No. 05-19-01555-CV, 2022 WL 202961, at *8 (Tex. App.—Dallas Jan. 24, 2022, no pet.) (mem. op.); *Mays v. Bank One, N.A.*, 150 S.W.3d 897, 899 (Tex. App.—Dallas 2004, no pet.). Texas Rule of Civil Procedure 94 provides that a party must "set forth affirmatively" any matter constituting an avoidance or affirmative defense. TEX. R. CIV. P. 94. Regardless of the merits of a party's argument on appeal, the issue of offset is waived if it was not pleaded in the trial court. *See Ramirez*, 2022 WL 202961, at *8; *Mays*, 150 S.W.3d at 899. Here, appellant's live answer contained a general denial and affirmative defenses, but not the affirmative defense of offset. Therefore, appellant has waived any right to offset. *See Ramirez*, 2022 WL 202661, at *8 (citing *Mays*, 150 S.W.3d at 899).

–16–

Second, appellant complains he was charged $29,172.01 for a brokerage commission unrelated to his lease. Documents attached to Palmer's declaration demonstrate a commission related to the lease of Sri Laxmi Foods LW, LLC., which occupied the leased premises after appellant. The obligation sheet states, "A replacement tenant, doing business as Desi Chowrastha Indian Restaurant, commences April 19, 2022." It also states, "Amortized Brokerage Commissions on Replacement Tenant: Commission: $29,172.01." Moreover, appellant's lease provides, "Tenant shall compensate Landlord for . . . all expenses incurred by Landlord in reletting (including . . . brokerage fees[.]" Consequently, the trial judge did not err in concluding the obligation sheet and the terms of the lease authorized appellee to charge appellant for the brokerage fee. Nor did the trial court err in concluding appellant failed to raise a genuine issue of material fact concerning the fee.

Additionally, appellant argues he raised a genuine issue of material fact that appellee failed to mitigate damages. Appellant complains of (1) an unreasonably high finish-out allowance appellee provided to its subsequent tenant and (2) an unreasonably low base rental amount in appellee's lease with its subsequent tenant. In his first amended answer, appellant pleaded the affirmative defense of failure to mitigate damages. Appellant bore the burden to raise a fact issue on the affirmative defense of mitigation in order to avoid summary judgment. *See Towncreek Indus., LLC v. Wells Fargo Bank, N.A.*, No. 02-15-00393-CV, 2016 WL 6305257, at *6

(Tex. App.—Fort Worth Oct. 27, 2016, no pet.) (mem. op.). A breaching tenant bears the burden of proof to demonstrate that the landlord has mitigated or failed to mitigate damages and the amount by which the landlord reduced or could have reduced its damages. *See Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997). Appellant declared in his summary judgment declaration that the amount of the subsequent tenant's finish-out allowance was not reasonable or necessary. He also declared that the subsequent tenant's rent was unreasonable and shocking. However, appellant failed to provide evidence of the monetary amount of a reasonable and necessary finish-out allowance and rent. Consequently, the trial court did not err in concluding appellant failed to raise a fact issue concerning mitigation. *See Ex-Change Auto Sales v. KUT Auto Sales*, No. 05-02-00307-CV, 2002 WL 31086922, at *1 (Tex. App.—Dallas Sept. 19, 2002, pet. denied) (mem. op.) (citing *Austin Hill Country Realty, Inc.*, 948 S.W.2d at 299, and affirming summary judgment because appellant failed to carry its burden to prove the amount by which the landlord reduced or could have reduced its damages), *opinion supplemented on denial of reh'g en banc,* No. 05-02-00307-CV, 2002 WL 31418038 (Tex. App.—Dallas Oct. 29, 2002, no pet.) (mem. op.).

Consequently, we overrule appellant's second issue on appeal.

## **THE RELEASE AGREEMENT**

Appellant states his third issue as follows,

–18–

Does Nizarali Lalani qualify as a released party under the terms of the settlement, mutual release and indemnification agreement?

<u>APPLICABLE LAW</u>

A release surrenders legal rights or obligations between the parties pursuant to an agreement. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). A release operates to extinguish or forfeit a party's claim or claims as effectively as would a prior judgment between the parties and is a bar to any right of action on the released matter. *See id.* A release is an affirmative defense and, because it is also a contract, must be construed as such. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *Stroop v. N. Cnty. Mut. Ins. Co.*, 133 S.W.3d 844, 851 (Tex. App.—Dallas 2004, pet. denied); *see also* TEX. R. CIV. P. 94.

We construe a release in light of the facts and circumstances surrounding its execution. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991); *Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 221 (Tex. 1991). We are further bound to a narrow construction of categorical releases. *See Victoria Bank & Trust Co.*, 811 S.W.2d at 938. When construing a contract, courts must give effect to the true intent of the parties as expressed in the writing. *See Coats v. Ruiz*, 198 S.W.3d 863, 879 (Tex. App.—Dallas 2006, no pet.) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). When interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *See Wal-Mart Stores, Inc. v. Xerox State & Loc.*

*Sols., Inc.*, 663 S.W.3d 569, 584 n.71 (Tex. 2023). In *Calpine Producer Services, L.P. v. Wiser Oil Company* we held:

> The court should consider that the "intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." This is often referred to as the "Four Corners Rule" which means that the intention of the parties is to be ascertained from the instrument as a whole and not from isolated parts thereof. Moreover, a court will not change the contract merely because it or one of the parties comes to dislike its provisions or thinks that something else is needed. The court will not "ask about the subjective intent of the parties to the contract." When the contract is unambiguous, the court should apply the pertinent rules of construction, apply the plain meaning of the contract language, and enforce the contract as written.

169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.) (citations omitted). We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *See Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). The interpretation of an unambiguous contract is a question of law. *See Jacobson v. DP Partners Ltd. P'ship*, 245 S.W.3d 102, 106 (Tex. App.—Dallas 2008, no pet.) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999)).

A release applies to a party that is either specifically identified in the release or described with sufficient particularity. *See Schomburg v. TRW Vehicle Safety Sys.,*

*Inc.*, 242 S.W.3d 911, 913 (Tex. App.—Dallas 2008, pet. denied). The specific identification requirement for a release is met if "a stranger could readily identify the released party." *Ambrosio v. EPS Wireless, Inc.*, No. 05-99-01442-CV, 2000 WL 1160696, at *3 (Tex. App.—Dallas Aug. 18, 2000, no pet.) (not designated for publication); *accord McMillen v. Klingensmith*, 467 S.W.2d 193, 196 (Tex. 1971) ("The rule is a simple one. Unless a party is named in a release, he is not released. . . . We hold that a release of a party or parties named or otherwise specifically identified fully releases only the parties so named or identified, but no others.").

ANALYSIS

Appellant argues he "clearly" qualifies as a "released party" under the terms of a settlement agreement signed on behalf of Rave Restaurant Group, Inc., and Weitzman Management Corporation d/b/a Weitzman. The agreement specifically identifies Rave Restaurant Group, Inc. as the released party. Moreover, it defines "released parties" as follows,

> 1.02 As used herein, "Released Parties" shall mean Rave Restaurant Group, Inc. ("Defendant"). Styled in Petition as "Rave Restaurant Group, Inc. f/k/a Pizza Inn Holdings, Inc., a Missouri Corporation" including all parent, subsidiary and *affiliate companies, joint ventures* (whether past, present or future), employees, officers, directors, shareholders, agents, contractors, attorneys, insurance companies, syndicates and following vertical markets—past and present, and their insurers and re-insurers, heirs, executors, administrators, estates, and successors. *Released Parties shall not include co-defendant and former tenant, Nadirali Lalani.* Releasing Parties and Released Parties, when used herein together, shall be collectively referred to as the "Parties."

–21–

(Emphases added.) The release recites it relates to a lawsuit other than the lawsuit now before this Court. Appellant's brother, Nadirali Lalani¸ was a co-defendant in that separate lawsuit. The release explicitly provides Nadirali Lalani "is not a party to this settlement agreement." Moreover, appellant was not party to that separate lawsuit and did not sign the release.

Neither party before this Court argues the release is ambiguous. Therefore, we interpret it as a matter of law. *See Jacobson*, 245 S.W.3d at 106.

Appellant argues he is a "released party" because he "should be considered" as falling within the category of either a joint venture or an affiliated company of released party Rave Restaurant Group, Inc., or one of its related companies. As noted, we are bound to a narrow construction of such categorical releases. *See Headington Royalty, Inc. v. Finley Res., Inc.*, 623 S.W.3d 480, 490 (Tex. App.—Dallas 2021), *aff'd*, 672 S.W.3d 332 (Tex. 2023).

In support of his joint-venture argument, appellant cites to his summary judgment declaration. However, appellant's declaration does not contain the words "joint venture." The declaration does not state appellant was a joint venture within the definition of "released parties" or state facts supporting existence of a joint venture. *Cf. First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 225 (Tex. 2017) ("The elements of a joint venture are (1) an express or implied agreement to engage in a joint venture, (2) a community of interest in the venture, (3) an agreement to share profits and losses from the enterprise, and (4) a mutual

–22–

right of control or management of the enterprise). Moreover, appellant's declaration states he was "a franchisee" of Pie Five restaurants. The Texas Supreme Court has recognized franchisors and franchisees are not usually engaged in joint ventures. *See Saint Joseph Hosp. v Wolff*, 94 S.W.3d 513, 528 (Tex. 2002) ("[A] franchisor, wholesaler, or supplier usually does not have a 'community of pecuniary interest' in the retail sales of its respective franchisees, retailers, or customers."). Appellant fails to cite to summary judgment evidence that he, although a purported franchisee, was engaged in a joint venture contrary to the usual situation noted in *Saint Joseph Hospital*.

Nor does appellant's summary judgment declaration support his argument that he was an affiliated company within the release's definition of "released parties." First, we consider whether appellant falls within the release's meaning of "affiliated companies." The release does not define the term "affiliated companies." Consequently, we apply its plain, ordinary, and generally accepted meaning. *See Heritage Res., Inc.*, 939 S.W.2d at 121. "Affiliate" is generally defined as a "corporation that is related to another corporation by shareholdings or other means of control" and as a "company effectively controlled by another or associated with others under common ownership or control." *Vision Cap. Real Est., LLC v. Wurzak Hotel Grp.*, No. 05-15-00917-CV, 2016 WL 6093977, at *4 (Tex. App.—Dallas Oct. 19, 2016, no pet.) (mem. op.); *Eckland Consultants, Inc. v. Ryder, Stillwell Inc.*, 176 S.W.3d 80, 88 (Tex. App.–Houston [1st Dist.] 2004, no pet.) (citing *Affiliate*,

BLACK'S LAW DICTIONARY (7th ed. 1999), and *Affiliate*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971)). Moreover, "company" is defined as a "union or association of persons for carrying on a commercial or industrial enterprise; a partnership, corporation, association, joint stock company." *Company*, BLACK'S LAW DICTIONARY (6th ed. 1990). Appellant does not assert or provide authority or summary judgment evidence that he falls within the plain meaning of "affiliate" or "company." The definitions above indicate that individual persons, such as appellant, are not affiliates or companies. Second, appellant bases his argument that he is an affiliated company solely on his summary judgment declaration. However, the declaration does not assert appellant is an affiliated company and provides no facts to support such a conclusion.

We conclude the release and summary judgment evidence present no evidence that the parties to the release intended that appellant was a released joint venture or an affiliated company.

<u>INTERPRETATION OF THE RELEASE AS A WHOLE</u>

Appellant argues that the release, interpreted as a whole, demonstrates he is a released party. Appellant argues, "The fact that Nadirali Lalani was explicitly excepted from the release itself evidences that [appellant was] intended to be included in the release." He argues that the release's provision that Nadirali Lalani was not a released party would be "meaningless" if appellant were not intended to be a released party. He asserts, "For that clause to have meaning, it would require

–24–

the clause to include those parties affiliated with the Lease Agreement at issue, namely Appellant Nizarali Lalani who was the tenant and business operator."

However, we conclude the parties to the release plainly intended (1) to release one co-defendant, Rave Restaurant Group, Inc. and certain categorically described entities and individuals and (2) not to release another co-defendant, Nadirali Lalani. We reach this conclusion after construing the entire provision defining released parties, discerning the parties' intent from the plain language of the release, and harmonizing the release's provisions without rendering any provision meaningless. *Cf. See City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004); *Headington Royalty, Inc.*, 623 S.W.3d at 490; *Calpine Producer Servs., L.P.*, 169 S.W.3d at 787. We cannot rewrite a contract or add to its language, as appellant would have us do, under the guise of interpreting it. *See Thomas v. Thomas*, No. 05-22-00137-CV, 2023 WL 8862695, at *3 (Tex. App.—Dallas Dec. 22, 2023, no pet.) (mem. op.).

CONCLUSION

Appellant, as non-movant, failed to come forward with summary judgment evidence sufficient to raise a fact issue on his affirmative defense of release to avoid summary judgment. *See Brownlee*, 665 S.W.2d at 112 ("If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment."); *Fontana Evolution, LLC v. SCP Distrib.,*

*LLC*, No. 02-22-00211-CV; 2023 WL 308176, at \*4 (Tex. App.—Fort Worth Jan. 19, 2023, no pet.) (mem. op.) (summary judgment non-movant bore burden to raise a fact issue regarding the defense of release).

We overrule appellant's third appellate issue.

## EXPENSES AND ATTORNEY'S FEES

Appellant states his fourth issue as follows,

> Was the award of attorney's fees improper when the invoices were for a larger amount than time set forth in the entries?

Appellant complains of two entries on a March 9, 2022 invoice of appellee's counsel. They are (1) an expense charge of $753.34 and (2) an attorney's fee charge for 0.9 hours of labor.

## APPLICABLE LAW

Attorney's fees may be awarded on a traditional summary judgment only if the evidence is conclusive. *See Top Cat Ready Mix, LLC v. All. Trucking, L.P.,* No. 05-18-00175-CV, 2019 WL 275880, at \*6 (Tex. App.—Dallas Jan. 22, 2019, no pet.) (mem. op.) (citing *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 824 (Tex. App.—Houston [14th Dist.] Dec. 6, 2018, pet. denied)).

## ATTORNEY'S FEES PROVISION

In the present case, the lease provides, "If on account of any breach or default by Tenant in its obligations hereunder, Landlord shall employ an attorney to represent, enforce or defend any of Landlord's rights or remedies hereunder, Tenant

agrees to pay any reasonable attorneys' fees incurred by Landlord in connection therewith as are awarded by a court of competent jurisdiction."

## ANALYSIS

Initially, we conclude appellant's complaint of a $3,774.00 expense finds no support in the appellate record. Appellee argues it only requested an award of attorney's fees. Appellee argues it did not seek to recover the $753.34 in expenses. Counsel for appellee filed a declaration in support of an award of attorney's fees. In it, counsel itemized amounts for his attorney's fees and for his legal assistant's services. The itemized amounts equaled $3,774.00 The declaration sought $3,774.00 as reasonable and necessary attorney's fees—not expenses—rendered through the time of appellee's filing its motion for summary judgment. The declaration does not itemize expenses. Indeed, the order granting appellee's motion for summary judgment awards appellee "$3,774.00 for attorney[']s fees incurred in the prosecution of this action." The order does not address expenses or award an amount therefor. In sum, the expense of which appellant complains was neither sought as an award by appellant nor awarded by the trial court.

Appellant's remaining complaint concerns the trial court's award of attorney's fees. Appellant's complaint focuses on an invoice for legal services attached to the summary judgment declaration of appellee's counsel. He complains the invoice does not contain a description of services performed in exchange for a $445.50 charge for 0.9 hours of legal services. He asserts the lack of description for the 0.9 hour charge

–27–

raises a fact issue that precludes summary judgment. He does not otherwise complain of the award of attorney's fees in this Court.

In the trial court, appellee attached the declaration of its counsel to its motion for summary judgment seeking attorney's fees. The declaration addressed counsel's (1) legal education, (2) professional qualifications, (3) legal experience, (4) personal familiarity with the present case, and (5) opinion that the services and charges were reasonable and necessary. The declaration contains a chart for counsel's and a paralegal's "name/position," "years admitted," "hours," "hourly rate," and total "amount" of fees earned as of the date the declaration was signed. Another chart provided similar information for anticipated legal services related to appellee's motion for summary judgment. Appellee's counsel declared $3,774.00 was a reasonable and necessary fee for legal services. Counsel declared he considered several factors in determining the reasonableness of his fee, including: (1) the time and labor required by the nature and complexity of the case, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly, (2) the fee customarily charged in the locality for similar legal services, (3) the amount involved and the results obtained, (4) the time limitations imposed by the circumstances, and (5) the experience, reputation, and ability of the lawyer or lawyers performing the services. Invoices for legal services provided by appellee's counsel are attached to counsel's summary judgment declaration.

As appellant asserts, the complained-of invoice does not contain a description of legal services provided in exchange for 0.9 hours charged for attorney's fees. However, contemporaneous billing records are not required to prove that requested fees are reasonable and necessary. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502 (Tex. 2019). The declaration of appellee's counsel states he (1) conducted a factual investigation of the Landlord's claims and (2) reviewed and analyzed the underlying commercial lease agreement which is the subject matter of this action. Notably, these two services are neither described nor charged in any invoice attached to the summary judgment declaration of appellee's counsel. In sum, the invoices did not describe the legal services of (1) analyzing the factual basis of appellant's claims or (2) analyzing the lease, but counsel's declaration did. Moreover, the only portion of all invoices that did not contain a description of services was for 0.9 hours of legal services.

The affidavit of an attorney "setting forth the attorney's qualifications, opinion regarding reasonable attorney's fees, and the basis for the opinion 'will be sufficient to support summary judgment, if uncontroverted.'" *Microlaser Therapy Corp. v. White*, No. 05-17-00761-CV, 2018 WL 6845242, at *6 (Tex. App.—Dallas Nov. 16, 2018, pet. denied) (mem. op.). Testimony from a party's attorney about the party's attorney's fees is taken as true as a matter of law if the testimony is not contradicted by any other witness and is clear, positive, direct, and free from contradiction. *See Blockbuster, Inc. v. C-Span Ent., Inc.*, 276 S.W.3d 482, 490 (Tex.

App.—Dallas 2008, pet. granted, judgm't vacated w.r.m.); *see also* TEX. R. CIV. P. 166a(c) (summary judgment may be based on uncontroverted testimony of expert witness "if the evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted"); *Top Cat Ready Mix, LLC*, 2019 WL 275880, at \*6. In the trial court, the declaration of appellant's counsel did not attempt to contradict the declaration that appellee's counsel analyzed the factual basis of appellant's claims and analyzed the lease. Appellant's counsel did not declare that any invoice included a description or charge for the analyses that was duplicative of counsel's declaration. Nor did he declare that a $445.50 charge for the two analyses was not reasonable and necessary. Similarly, appellant fails to make such arguments in this Court.

Consequently, we reject appellant's argument that the inclusion of the $445.50 charge in the trial court's award for attorney's fees is "simply unexplained, with no evidence to support their inclusion." Rather, the services were described in the declaration of appellee's counsel. Moreover, the trial court appropriately took the declaration of appellant's counsel to be true. *See, e.g., Top Cat Ready Mix, LLC*, 2019 WL 275880, at \*6.

Finally, the declaration of appellant's counsel asserts appellee seeks unreasonable and unnecessary attorney's fees. The declaration states appellee's requested attorney's fees were unreasonable and unnecessary in part. However, the declaration's generalized assertions are insufficient to defeat summary judgment.

–30–

*See Hinojosa v. Citibank (S.D.), N.A.,* No. 05-07-00059-CV, 2008 WL 570601, at *4 (Tex. App.—Dallas Mar. 4, 2008, pet. denied) (mem. op.) ("An affidavit filed by non-movant's counsel that simply criticizes the fees sought by the movant as unreasonable without setting forth . . . the basis for his opinion will not be sufficient to defeat summary judgment."); *see also GTFM Car Co. Inc. v. Rodriguez*, No. 04-12-00188-CV, 2012 WL 5232328, at *4 (Tex. App.—San Antonio Oct. 24, 2012, no pet.) (mem. op.) (same). Additionally, the declaration generally states appellee's counsel could "reuse" work from a previous case in the case now before this Court. However, the declaration fails to present facts to support the conclusion. *See GTFM Car Co. Inc.*, 2012 WL 5232328, at *4 (controverting affidavit that merely criticizes the fees sought is conclusory and cannot raise a fact issue regarding the reasonableness of the attorney's fees sought by the movant).

Consequently, we conclude appellee's summary judgment evidence proved appellee's entitlement to $3,774.00 reasonable and necessary attorney's fees as a matter of law. *See id*. Contrary to appellee's assertions, he failed to raise a fact issue on attorney's fees. The trial court did not err in awarding appellee $3,774.00 attorney's fees.

. . .

We overrule appellant's fourth issue on appeal.

# CONCLUSION

We affirm the trial court's judgment.


221226F.P05

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NIZARALI LALANI, AN INDIVIDUAL, A/K/A NICK LALANI, Appellant

No. 05-22-01226-CV      V.

DEVELOPMENT SWC 121/423, L.P., SUCCESSOR-IN-INTEREST TO SWC 121/143, L.P., Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas Trial Court Cause No. 429-01108-2022.
Opinion delivered by Justice Pedersen, III. Justices Molberg and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DEVELOPMENT SWC 121/423, L.P., SUCCESSOR-IN-INTEREST TO SWC 121/143, L.P. recover its costs of this appeal from appellant NIZARALI LALANI, AN INDIVIDUAL, A/K/A NICK LALANI.

Judgment entered May 24, 2024.